PATRICK M. RYAN (SBN 203215)
*pryan@bzbm.com*
CHAD E. DEVEAUX (SBN 215482)
*cdeveaux@bzbm.com*
CHRISTOPHER W. GRIBBLE (SBN 285337)
*cgribble@bzbm.com*
BARTKO ZANKEL BUNZEL & MILLER
A Professional Law Corporation
One Embarcadero Center, Suite 800
San Francisco, California 94111
Telephone: (415) 956-1900
Facsimile: (415) 956-1152

Attorneys for Defendants COUNTY OF SAN MATEO and CHRISTINA CORPUS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| A.B.O. Comix, Kenneth Roberts, Zachary Greenberg, Ruben Gonzalez-Magallanes, Domingo Aguilar, Kevin Prasad, Malti Prasad, and Wumi Oladipo,<br><br>Plaintiffs,<br><br>v.<br><br>County of San Mateo and Christina Corpus, in her official capacity as Sheriff of San Mateo County,<br><br>Defendants. | Case No. 4:23-cv-1865<br><br>**DEFENDANTS' NOTICE OF REMOVAL TO FEDERAL COURT**<br><br>Complaint Filed: March 9, 2023 |

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1441(a) and 1446, Defendants County of San Mateo ("County") and Christina Corpus, in her official capacity as Sheriff of San Mateo County ("Corpus") (collectively "Defendants") hereby remove this action from the Superior Court of the State of California for the County of San Mateo to the United States District Court for the Northern District of California. This Court has original jurisdiction of this action under 28 U.S.C § 1331(a), and this action is removed to this Court pursuant to, among other applicable statutory provisions, 28 U.S.C. §§ 1441(a) and 1446. In support of this Notice of Removal, Defendants set forth the following grounds for removal:

## I. PROCEDURAL HISTORY

1. On March 9, 2023, Plaintiffs A.B.O. Comix, Kenneth Roberts, Zachary Greenberg, Ruben Gonzalez-Magallanes, Domingo Aguilar, Kevin Prasad, Malti Prasad, and Wumi Oladipo (collectively, "Plaintiffs") commenced a civil action, in the Superior Court of the State of California for the County of San Mateo, against Defendants County of San Mateo ("County") and Christina Corpus, in her official capacity as Sheriff of San Mateo County ("Corpus"). The action was captioned *Complaint for Injunctive and Declaratory Relief for Violation of Article 1, Sections 2 and 13 of the California Constitution, the First and Fourth Amendments to the United States Constitution, and the Religious Land Use and Institutionalized Persons Act* and assigned Case No. 23-CIV-01075 ("Complaint" or the "Action"). True and correct copies of the Summons and Complaint are attached hereto as **Exhibit A**. Defendants have not pled, answered, or otherwise appeared in the Action.

2. In the Action, Plaintiffs seek, among other things declaratory and injunctive relief from Defendants' mail policy, which Plaintiffs allege violates the First Amendment of the U.S. Constitution, Article I, Section 2 of the California Constitution, the Fourth Amendment of the U.S. Constitution, Article I, Section 13 of the California Constitution, and the Religious Land Use and Institutionalized Persons Act. Comp. ¶¶ 88-95.

3. Defendants deny any liability whatsoever under any theory, and further believe the

allegations of this lawsuit are demonstrably false. Solely for purposes of the removal notice, Defendants rely on the allegations of the Complaint to satisfy the requirements of removal under 28 U.S.C. §§ 1331, 1367(a) 1441(a) and 42 U.S.C. §§ 1983, 2000cc *et seq*.

## II.  TIMELINESS OF REMOVAL

4.  Plaintiffs sent the County a copy of the Complaint by mail and related papers along with a request for the County to accept service by return of the enclosed Notice and Acknowledgement form. The County received the Complaint on March 17, 2023, and a County representative signed the Notice of Acknowledgement on March 30, 2023, accepting service on behalf of both the County and Corpus, and making service effective as of that date pursuant to California Civil Procedure Code § 415.30(c). Declaration of David Silberman ¶¶ 4-6, Exs. 1 and 2. As such, the Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b) and Federal Rule of Civil Procedure 6(a) as having been filed within 30 days after service of the Summons and the Complaint. *See e.g.*, *Lerma v. Arends*, 2011 WL 2516173, at *2 (N.D. Cal. June 22, 2011) ("in a case involving service by mail, service is not effective until a Notice of Acknowledgment of receipt is signed," which starts the clock for filing a "Notice of Removal").

## III.  JURISDICTION

### A.  The Court's Original Jurisdiction Under 28 U.S.C. § 1331(a)

5.  This Action is within the original jurisdiction of this Court under 28 U.S.C. § 1331. Section 1331(a) provides that Federal district courts have original jurisdiction in actions "arising under the Constitution, laws, or treaties of the United States." Courts have consistently held that federal jurisdiction in an action is proper where the resolution of a case "depends directly on construction of the Constitution." *Powell v. McCormack*, 395 U.S. 486, 516 (1969).

6.  The Plaintiffs' first and third claims for relief allege that Defendants' mail policy violates the plaintiffs' rights under the First Amendment of the U.S. Constitution and the Fourth Amendment of the U.S. Constitution, respectively. Comp. ¶¶ 88-92. The Plaintiffs' fifth claim for relief seeks relief under the federal Religious Land Use and Institutionalized Persons Act (42 U.S.C. § 2000cc *et seq*). *Id*. ¶¶ 94-95. As such, the Plaintiffs' claims for relief necessarily arise under the U.S. Constitution and this Court has original jurisdiction.

**B. The Court's Supplemental Jurisdiction Under 28 U.S.C. § 1367(a)**

7. Supplemental jurisdiction in federal question cases extends to claims that are sufficiently related to the federal claim to be part of the "same case or controversy." 28 U.S.C. § 1367(a). As long as such relationship exists, the district court may adjudicate state law claims asserted by plaintiff without any other basis for federal jurisdiction. *See Danner v. Himmelfarb*, 858 F.2d 515, 522 (9th Cir. 1988). In other words, so long as the Court deems that one of Plaintiffs' claims for relief presents a federal question, the Court may assert supplemental jurisdiction over the remaining claims if they relate to the federal question.

8. Here, Plaintiffs' second[1] and fourth[2] counts mirror their respective first and third counts. They are all premised on the same nucleus of operative facts. That is, all of the claims for relief pertain to the Defendants' mail policies. Accordingly, the Court has the power to exercise supplemental jurisdiction here because the plaintiffs' state and federal constitutional claims relate to the plaintiffs' alleged injuries from the Defendants' mail policies.

## IV. REMOVAL OF THE ACTION IS PROPER

9. The Action satisfies the requirements of 28 U.S.C. §§ 1331 and 1441 and, therefore, may be removed to this Court because the Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1331(a) given that Plaintiffs claims for relief either arise directly under federal law, e.g., 42 U.S.C. § 1983, 42 U.S.C. § 2000cc *et seq*, or are related to the federal claims in that all of the Plaintiffs' remaining claims for relief are premised on the same nucleus of operative facts.

## V. INTRADISTRICT ASSIGNMENT

10. This Action is properly removable to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1446(a) because the Superior Court of the

---

[1] "For the same reasons, Defendants' mail policy violates Article I, Section 2 of the California." Comp. ¶ 90.

[2] "For the same reasons, Defendants' mail policy violates Article I, Section 13 of the California." Comp. ¶ 93.

State of California, County of San Mateo, is located within this District.

## VI. NOTICE TO STATE COURT AND PLAINTIFFS

11. Defendants will give written notice of the filing of this notice of removal as required by 28 U.S.C. § 1446(d). Copies of this Notice of Removal and a Notice of Filing of this Notice of Removal will be filed with the Clerk of the Superior Court of the State of California, County of San Mateo, and promptly served on Plaintiffs. A true and correct copy of the Notice of Filing of Notice of Removal is attached hereto as **Exhibit B**.

## VII. CONCLUSION

12. For the foregoing reasons, this Court has original jurisdiction over this Action, and Defendants hereby remove this Action pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446 and 42 U.S.C. § 1983, 42 U.S.C. § 2000cc *et seq*.

DATED: April 17, 2023

Respectfully submitted,

BARTKO ZANKEL BUNZEL & MILLER
A Professional Law Corporation

By: ______________________________
PATRICK M. RYAN
Attorneys for Defendants
COUNTY OF SAN MATEO and
CHRISTINA CORPUS

# EXHIBIT A

# HAND DELIVERED DOCUMENT

OFFICE OF THE COUNTY ATTORNEY
400 COUNTY CENTER, 6TH FLOOR
REDWOOD CITY, CA 94063

RECEIVED

MAR 17 2023

COUNTY COUNSEL
SAN MATEO COUNTY

(Received stamp)

Received from: Fresia Limin (CEO)
(Name/Agency)

Received by: Valerie Trigueros

Time: 3:05 PM



Cara Gagliano
Electronic Frontier Foundation
815 Eddy St.
San Francisco, CA 94109

RECEIVED
IN THE OFFICE OF
MAR 17 2023
CLERK OF THE
BOARD OF SUPERVISORS

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

Electronically
FILED
by Superior Court of California, County of San Mateo
ON 3/9/2023
By /s/ Jennifer Torres
Deputy Clerk

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***
County of San Mateo and Christina Corpus, in her official capacity as Sheriff of San Mateo County

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***
A.B.O. Comix, Kenneth Roberts, Zachary Greenberg, Ruben Gonzalez-Magallanes, Domingo Aguilar, Kevin Prasad, Malti Prasad, and Wumi Oladipo

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡**AVISO!** Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* San Mateo Superior Court, Civil Division
400 County Center, Redwood City, CA 94063

CASE NUMBER:
*(Número del Caso):* 23-CIV-01075

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Cara Gagliano, Electronic Frontier Foundation, 815 Eddy Street, San Francisco, CA 94109, (415) 436-9333

DATE: *(Fecha)* 3/9/2023 Neal I. Taniguchi Clerk, by *(Secretario)* /s/ Jennifer Torres, Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date)*:

For your protection and privacy, please press the Clear This Form button after you have printed the form.
Print this form Save this form Clear this form

POS-015

ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO: 308639
NAME: Cara Gagliano
FIRM NAME: Electronic Frontier Foundation
STREET ADDRESS: 815 Eddy Street
CITY: San Francisco STATE: CA ZIP CODE: 94109
TELEPHONE NO.: (415) 436-9333 FAX NO.:
E-MAIL ADDRESS: cara@eff.org
ATTORNEY FOR (Name): A.B.O. Comix, et al.

FOR COURT USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Mateo
STREET ADDRESS: 400 County Center, 1st Floor
MAILING ADDRESS:
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME: Southern Branch of Superior Court

Plaintiff/Petitioner: A.B.O. Comix, et al.
Defendant/Respondent: County of San Mateo and Christina Corpus, in her official capac

NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL

CASE NUMBER: 23-CIV-01075

TO *(insert name of party being served)*: County of San Mateo

## NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: 03/10/2023

Reed Canaan
(TYPE OR PRINT NAME)

(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of ***(to be completed by sender before mailing):***

1. [x] A copy of the summons and of the complaint.
2. [x] Other *(specify)*:

Per Local Rule 3.804, Plaintiffs additionally serve: Notice of Assignment for All Purposes and Notice of Case Management Conference; Court's ADR information package, per CRC Rule 3.221; and a blank form of the Case Management Statement (CM-110).

***(To be completed by recipient):***

Date this form is signed:

(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY, ON WHOSE BEHALF THIS FORM IS SIGNED)

(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL

Code of Civil Procedure, §§ 415.30, 417.10
www.courtinfo.ca.gov

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO: 308639<br>NAME: Cara Gagliano<br>FIRM NAME: Electronic Frontier Foundation<br>STREET ADDRESS: 815 Eddy Street<br>CITY: San Francisco STATE: CA ZIP CODE: 94109<br>TELEPHONE NO.: (415) 436-9333 FAX NO.:<br>E-MAIL ADDRESS: cara@eff.org<br>ATTORNEY FOR (*Name*): A.B.O. Comix, et al. | *FOR COURT USE ONLY* |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Mateo<br>STREET ADDRESS: 400 County Center, 1st Floor<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Redwood City, CA 94063<br>BRANCH NAME: Southern Branch of Superior Court | |
| Plaintiff/Petitioner: A.B.O. Comix, et al.<br>Defendant/Respondent: County of San Mateo and Christina Corpus, in her official capac | |
| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER:<br>23-CIV-01075 |

TO *(insert name of party being served)*: County of San Mateo

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: 03/10/2023

Reed Canaan
(TYPE OR PRINT NAME)

(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of ***(to be completed by sender before mailing):***

1. [x] A copy of the summons and of the complaint.
2. [x] Other *(specify)*:

Per Local Rule 3.804, Plaintiffs additionally serve: Notice of Assignment for All Purposes and Notice of Case Management Conference; Court's ADR information package, per CRC Rule 3.221; and a blank form of the Case Management Statement (CM-110).

***(To be completed by recipient):***

Date this form is signed:

(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY, ON WHOSE BEHALF THIS FORM IS SIGNED)

(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

CARA GAGLIANO (SBN 308639)
AARON MACKEY (SBN 286647)
MUKUND RATHI (SBN 330622)
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Tel.: (415) 436-9333
Email: cara@eff.org

STEPHANIE KRENT (*Pro Hac Vice* motion forthcoming)
ALEX ABDO (*Pro Hac Vice* motion forthcoming)
KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY
475 Riverside Drive, Suite 302
New York, NY 10115
Tel.: (646) 745-8500
Email: stephanie.krent@knightcolumbia.org

MARIA DEL PILAR GONZALEZ MORALES (SBN 308550)
EMILY OLIVENCIA-AUDET (SBN 342116)
SHUBHRA SHIVPURI (SBN 295543)
SOCIAL JUSTICE LEGAL FOUNDATION
523 West 6th Street, Suite 450
Los Angeles, CA 90014
Tel.: (213) 973-4063
Email: pgonzalez@socialjusticelaw.org

*Attorneys for Plaintiffs*

Electronically
FILED
by Superior Court of California, County of San Mateo
ON 3/9/2023
By /s/ Jennifer Torres
Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SAN MATEO**

A.B.O. Comix, Kenneth Roberts, Zachary Greenberg, Ruben Gonzalez-Magallanes, Domingo Aguilar, Kevin Prasad, Malti Prasad, and Wumi Oladipo,

Plaintiffs,

v.

County of San Mateo and Christina Corpus, in her official capacity as Sheriff of San Mateo County,

Defendants.

Case No.: 23-CIV-01075

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF FOR VIOLATION OF ARTICLE 1, SECTIONS 2 AND 13 OF THE CALIFORNIA CONSTITUTION, THE FIRST AND FOURTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND THE RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT**

## INTRODUCTION

1. This case challenges San Mateo County's policy of digitizing and then destroying mail sent to people in its jails—depriving them of physical letters, drawings, pictures, and mementos—and of conducting suspicionless surveillance of that mail and the individuals who send it. In 2021, San Mateo County banned people in its jails from receiving any physical mail other than attorney communications. Under this new policy, the senders of mail must route their letters to Smart Communications, a private for-profit company based in Florida, where the company scans the mail, destroys it, and stores a digital copy for a minimum of seven years. Through this service, called MailGuard, people in jail may access digital copies of their mail only if they agree to MailGuard's terms of use, and only through shared tablets and kiosks that must be used in public spaces. Smart Communications stores the digital copies in a database that gives the County unfettered access to every piece of mail received.[1]

2. San Mateo County's policy banning physical mail and subjecting digital copies to long-term surveillance violates the expressive, associational, privacy, and religious rights of the individuals in its jails, including those presumed innocent, and of the many individuals who send mail to those incarcerated people. Banning physical mail deprives incarcerated people and their communities of a uniquely expressive form of communication: Physical mail allows people to express themselves in ways that may feel too personal or sensitive for other modes of communication; it encourages deeper connection by giving correspondents the space to read and reflect before responding; and it evokes stronger and more lasting emotional meaning than digital correspondence. Under the County's policy, incarcerated people often struggle to access even digital copies of their mail. The policy also subjects both the senders and recipients of mail to increased and unwarranted surveillance by San Mateo County and others. At the same time, the policy serves no legitimate penological purpose but instead undermines the community and familial ties necessary for successful reentry.

[1] This complaint refers to both Defendants collectively as "San Mateo County" or "the County."

3.    Plaintiffs Kenneth Roberts, Zachary Greenberg, Ruben Gonzalez-Magallanes, Domingo Aguilar, and Kevin Prasad are among the approximately 1,000 individuals incarcerated in San Mateo County for whom physical mail was once a lifeline, connecting them to loved ones, educators, and religious advisors. They held letters and drawings that their loved ones also held, and they frequently re-read mail in the privacy of their cells, when they awoke in the morning or before falling asleep. Many in the County's jails also relied on physical mail to take correspondence courses, because the physical copies allowed them to annotate readings, fill out worksheets, and send completed coursework back to their instructors.

4.    Now, they have difficulty accessing even digital copies of their mail. Those who agree to MailGuard's terms of use can access their mail only on shared tablets and kiosks, only in public spaces, and only during limited recreational time. They may have as little as thirty minutes of recreational time each day, during which they engage in other activities as well, including showering, exercising, and calling home. They cannot review correspondence in the privacy of their cells; they cannot spend any significant amount of time reading and reflecting on the letters they receive; and they cannot easily return to their correspondence. The tablets are also plagued by technical problems that can prevent them from reading their mail at all.

5.    Plaintiff A.B.O. Comix is one of the many organizations dedicated to supporting and sustaining incarcerated people. It is a collective of artists that works to amplify the voices of incarcerated LGBTQ people through artistic expression. A.B.O. Comix relies on mail to communicate with incarcerated people about their artistic projects, to circulate newsletters with interactive storytelling prompts, to connect people in prisons and jails with penpals, and to send holiday cards as signs of love and support. These efforts have been hampered by restrictive mail policies, including San Mateo County's policy of destroying and digitizing mail.

6.    Plaintiffs Malti Prasad and Wumi Oladipo have loved ones incarcerated in San Mateo County's jails. They have also been denied an important form of protected expression. They used to send handwritten letters, photographs, birthday cards, and religious and educational materials to their loved ones in jail. But the County put an end to this type of expression. Now, they must send any mail to Smart Communications, which will destroy the mail after scanning it into a

digital facsimile drained of much of its sentiment. Both Ms. Prasad and Ms. Oladipo have made the difficult decision to stop sending mail to their loved ones, and have been forced to rely on alternatives that are less personal, less private, less easily accessible, and more costly.

7.     The County's digitization and long-term storage of correspondence through MailGuard enables sophisticated and invasive surveillance of both incarcerated and nonincarcerated people. Every piece of mail sent through MailGuard goes into a database that is searchable through a dashboard Smart Communications maintains for San Mateo County. The County has given access to this dashboard to all law enforcement officers in San Mateo County's corrections division, to investigators in its sheriff's office and district attorney's Office, and to investigators in other municipalities in the County. These individuals can read and search mail through the dashboard without the need for individualized suspicion of wrongdoing, and without providing notice to either the sender or the recipient that their mail has been read or searched. On information and belief, County officials can specify keywords of their choosing and receive alerts any time a piece of mail contains one of those keywords. Finally, County officials can access the additional sensitive information that Smart Communications collects from individuals who send mail to the County's jails and sign up for its mail tracking service. This surveillance has predictably deterred many, including members of A.B.O. Comix, from writing as freely about sensitive topics, and has deterred others, including Ms. Oladipo and Ms. Prasad, from sending mail into the County's jails at all.

8.     While officials are entitled to some deference in administering jails and prisons, the Supreme Court has long emphasized that judicial review of speech-restrictive policies in these settings is not toothless. Here, San Mateo County's mail policy serves no legitimate penological purpose. Although the County's then–Sheriff, Carlos Bolanos, announced that the County's mail policy was meant to "prioritize . . . safety and security," the County has never explained why it initiated sweeping and long-lasting surveillance of both incarcerated and nonincarcerated people. And it has not justified its decision to ban mail over concerns about "fentanyl exposures." On information and belief, mail is not a significant source of fentanyl or other drugs in San Mateo County's jails.

9. Rather than further the County's goals, the mail policy undermines the County's penological interests in successful reentry. Numerous studies have confirmed that greater community and familial connection throughout incarceration, including through letter-writing, is associated with better post-incarceration adjustment. San Mateo County's mail policy, however, impedes expression and association during incarceration, threatening the important penological interests in, and sociological benefits of, correspondence by mail.

10. Finally, the County's mail policy also violates the religious rights of many of the people in its jails. Religious and spiritual practices are central to the lives of many incarcerated people, including Mr. Greenberg, Mr. Gonzalez-Magallanes, and Mr. Prasad. Mail was an important source of religious material, especially because of the difficulty of accessing religious guidance from jail services directly. Mail also allowed people to maintain individual spiritual practices by studying, meditating on, and sharing printed prayers, images, and religious instruction as they saw fit. The loss of physical religious correspondence has substantially burdened the religious practices of Mr. Greenberg, Mr. Gonzalez-Magallanes, and Mr. Prasad.

11. Plaintiffs now seek declaratory and injunctive relief from San Mateo County's mail policy. As described further below, San Mateo County's elimination of physical mail and use of MailGuard violates the First Amendment to the U.S. Constitution and Article I, Section 2 of the California Constitution by denying Plaintiffs and others the ability to use a uniquely expressive medium of communication and by chilling their expressive and associational activity. The policy also violates the Fourth Amendment to the U.S. Constitution and Article I, Section 13 of the California Constitution because it involves the search and seizure of correspondence and other information about the senders of mail for subsequent investigative use without any suspicion of wrongdoing, in a manner that is unreasonable at its inception and in its scope and duration. Finally, it also violates the Religious Land Use and Institutionalized Persons Act because it substantially burdens the ability of Mr. Greenberg, Mr. Gonzalez-Magallanes, and Mr. Prasad to receive, study, and share religious materials and is not the least restrictive means of achieving any compelling interest of the County.

## JURISDICTION AND VENUE

12. This Court has jurisdiction under California Code of Civil Procedure §§ 525, 526a, and 1060.

13. Venue is proper in this Court pursuant to California Code of Civil Procedure §§ 393(b), 394(a), and 395(a) because Defendants are located in San Mateo County and their actions giving rise to Plaintiffs' claims occurred in San Mateo County.

## PARTIES

14. Plaintiff A.B.O. Comix is a collective of artists that works to amplify the voices of LGBTQ prisoners through artistic expression. It is based in Oakland, California. Its staff have sent mail to at least one individual incarcerated in San Mateo County's jails, and have paid California sales tax within the past year.

15. Plaintiff Kenneth Roberts is currently incarcerated in San Mateo County at Maple Street Correctional Center, where he has been detained since September 2021. Mr. Roberts has paid sales tax on items in the jail's commissary within the past year.

16. Plaintiff Zachary Greenberg is currently incarcerated at Maple Street Correctional Center, where he has been detained since January 2021. Mr. Greenberg was previously incarcerated at Maguire Correctional Facility, also in San Mateo County, from December 2020 to January 2021. Mr. Greenberg has paid sales tax on items in the jail's commissary within the past year.

17. Plaintiff Ruben Gonzalez-Magallanes is currently incarcerated at Maple Street Correctional Center, where he has been detained since August 2022. Mr. Gonzalez-Magallanes has paid sales tax on items in the jail's commissary within the past year.

18. Plaintiff Domingo Aguilar is currently incarcerated at Maguire Correctional Facility, where he has been detained since June 2022. Mr. Aguilar was previously incarcerated at Maple Street Correctional Center from August 2019 to June 2022. Mr. Aguilar has paid sales tax on items in the jail's commissary within the past year.

19. Plaintiff Kevin Prasad is currently incarcerated at Maple Street Correctional Center, where he has been detained since April 2018. Mr. Prasad has paid sales tax on items in the jail's commissary within the past year.

20. Plaintiff Malti Prasad is the mother of Kevin Prasad. She lives in Sacramento County. She regularly shops in San Mateo County and has paid local sales tax in San Mateo County within the past year.

21. Plaintiff Wumi Oladipo is the significant other of Zachary Greenberg. She lives in Alameda County. She works in San Mateo County and has paid local sales tax in San Mateo County within the past year.

22. Defendant San Mateo County is a local government entity organized under the laws of the State of California. The San Mateo County Sheriff's Office is a division of San Mateo County. At the request of the sheriff's office, San Mateo County contracted with Smart Communications to destroy and digitize incoming non-legal mail through MailGuard.

23. Defendant Christina Corpus is the sheriff of San Mateo County. She is responsible for overseeing the sheriff's office and maintains responsibility for the policies and rules governing the County's correctional facilities, including the mail policy challenged here. She is sued in her official capacity only.

## FACTS

### *Smart Communications and MailGuard*

24. Smart Communications is a Florida-based company founded in 2009 that markets its services to prisons and jails around the country, emphasizing its ability to help law enforcement monitor phone calls, video visits, and electronic and physical correspondence.

25. This case concerns Smart Communications' MailGuard service, which prisons and jails use to eliminate physical mail behind bars. When a prison or jail implements MailGuard, it redirects physical mail to a facility in Florida run by Smart Communications. There, Smart Communications will open, scan, and upload digital copies of the mail into a proprietary database accessible to corrections and law enforcement officers through a searchable dashboard. Smart Communications will then destroy the physical mail. Utilizing the dashboard, corrections officers can review mail and either approve or reject it. If approved, a digital copy of the mail may be accessed by its recipient, typically via tablets or kiosks provided by Smart Communications.

26. Many prisons and jails have historically subjected incoming physical mail to an initial review before delivery to its recipient. The use of MailGuard, however, departs from this practice in two important ways.

27. First, MailGuard involves the elimination of physical mail. Some facilities, including those in San Mateo County, exempt privileged legal mail, but all other physical mail is simply forbidden. As discussed below, the MailGuard service replaces physical mail with scans that must be read on small tablets or kiosks that are in high demand and located in public spaces.

28. Second, the use of MailGuard subjects incoming mail and those who send it to surveillance that is unprecedented in its scope and duration:

a. Smart Communications stores the mail sent through MailGuard for a minimum of seven years, subjecting both the senders and recipients of mail to long-term surveillance. In its contract with San Mateo County, for example, Smart Communications agreed that it would store all digitized mail for seven years "from the date of the inmate's release from the County Facility." In late 2018, Jon Logan, the founder and CEO of Smart Communications, told a reporter for *Mother Jones* that, in its first ten years of business, Smart Communications had never deleted any records or any data from its database, adding that Smart Communications has "hundreds of millions of data records stored for investigators at anytime."

b. Smart Communications keeps the mail it scans in a searchable database. On information and belief, Smart Communications allows law enforcement officers to run unlimited keyword searches on the entire corpus of digitized mail or to set keyword flags that will notify officers whenever a selected keyword is used in a new piece of incoming mail. Because MailGuard is used on incoming mail, this surveillance implicates not only the incarcerated recipients of mail, but also the family members, friends, religious advisors, and others who send them mail.

c. Finally, on information and belief, this surveillance encompasses not just mail but a great deal of other information as well. MailGuard gives prison and jail officials access to sensitive and previously unavailable information about at least some

senders of mail, including their phone numbers, physical addresses, IP addresses, email addresses, credit card and banking information, and GPS locations. Smart Communications collects this information through a service that allows the senders of mail to "track postal mail delivery," but which Smart Communications has advertised to prisons and jails as collecting "significant new intelligence into the public sender of the postal mail, giving postal mail a digital fingerprint."

29. It is no surprise, then, that Smart Communications markets MailGuard as "an invaluable investigative/intelligence gathering tool" that provides a "massive increase in investigative intelligence gained on both inmate and public users." The very purpose of the service is to give law enforcement officers, like those in San Mateo County, the ability to obtain and examine unprecedented intelligence about incarcerated and nonincarcerated correspondents alike.

***San Mateo County's adoption of MailGuard***

30. Prior to April 2021, anyone wishing to communicate with people incarcerated in San Mateo County's jails could send mail directly to the facility. Corrections officers would inspect the mail for the presence of drugs or other threats to facility security, often with the assistance of trained drug-sniffing dogs and TruNarc, a Raman spectroscopy device that scans mail and packages for the presence of narcotics. Once mail was approved, it was delivered directly to its recipient, who could read (or re-read) the mail at any time and keep it with other personal belongings in their cell.

31. In 2021, with no opportunity for public comment or feedback, San Mateo County abruptly decided to eliminate physical mail within its facilities. On April 6, 2021, the sheriff's office issued a press release stating that, later that month, it would begin destroying and digitizing incoming mail using Smart Communications' services. After that announcement, the sheriff's office informed its corrections officers of the upcoming change and issued a request for proposals relating to mail destruction and digitization services. In May 2021, *after* MailGuard had already been in place for over a month at both Maguire Correctional Facility and Maple Street Correctional Center, San Mateo County announced that it would award the contract to Smart Communications.

32. San Mateo County formally entered into an agreement with Smart Communications on September 1, 2021. Pursuant to that agreement, the County agreed to adopt MailGuard and to make digitized mail accessible only on communal tablets and kiosks provided by Smart Communications, which the company contracted to provide at a ratio of one tablet for every three people incarcerated in San Mateo County's facilities. The agreement does not require Smart Communications to treat the mail it receives confidentially; it does not limit Smart Communications' ability to access or disseminate the information it collects; it does not require Smart Communications to institute specific security practices to minimize the risk of data breaches; it does not prohibit Smart Communications from collecting and monetizing information about the senders and recipients of mail; it does not require Smart Communications to scan mail within a particular time period; and it does not require Smart Communications to scan mail accurately or legibly.

33. Although the agreement purports to exclude religious mail, in practice the County subjects incoming religious correspondence to the mail policy, requiring it to be sent to Florida where it is digitized and then destroyed.

***San Mateo County's use of MailGuard***

**The expressive harms of eliminating physical mail**

34. Physical correspondence is a uniquely important and expressive medium of communication for incarcerated people and those who wish to communicate with them.

35. Being able to receive physical mail is crucial to individuals behind bars. It offers a kind of intimacy and emotional connection that other forms of communication cannot, by allowing a recipient to hold onto the object of the sender's expression, the very object that they recently held—whether a handwritten letter carefully penned and then folded, or a meticulously drawn picture from a child or young relative, or a photograph with a personal inscription on the back, or a memento chosen to convey what words might fail to express. Physical mail also gives recipients time to read and to reflect in the relative solitude of their jail cells, and to respond when ready with the original letter in front of them. It has a permanence that digital copies lack; many behind bars retain and regularly revisit important letters to remind them of their connections to the outside world

and to make it through particularly stressful moments. Tangible correspondence helps to build and sustain the bridges that those behind bars often lean on for resilience, with their loved ones and with their religious advisors and communities.

36. Physical mail is also necessary for incarcerated individuals to meaningfully participate in religious, educational, occupational, or community-based learning. Many in jail turn to outside clergy members for spiritual guidance, to correspondence courses for educational and occupational training, and to community organizations for personal growth and emotional support. These opportunities often involve writings and images best absorbed in physical form, so that recipients can underline, take notes on, contemplate, and easily return to the material. Access to educational material and community correspondence is especially important for those incarcerated in San Mateo County, where in-person educational opportunities are very limited. Educational services and programming were recently suspended for several months at Maple Street Correctional Center, and Maguire Correctional Facility simply does not offer any educational services or programming.

37. For similar reasons, being able to *send* physical mail is important for those who are not incarcerated. And it is especially important to those who are unable to visit their loved ones behind bars, whether because they live far away, are too frail to travel, or are younger than 18 and therefore not permitted to visit their loved ones incarcerated in San Mateo County.

38. San Mateo County has shut down this uniquely important and expressive medium of communication and replaced it with scanned mail, but scanned mail is no substitute. Scanned mail does not carry the same expressive and emotional resonance as physical mail. Social science research confirms this: Physical objects generally evoke stronger emotional responses than their digital counterparts. Objects, especially those linked to loved ones, more easily become infused with emotion, allowing recipients to derive comfort and other meaning from them. One study found that while physical objects evoke feelings of awe, wonderment, and fascination, high-quality digital scans of those objects do not. Even consumer research studies have shown that physical goods, in contrast to digital ones, are associated with greater permanence, emotional connection, and value.

39. The specific manner in which San Mateo County has implemented mail digitization has undermined still further the ability of those in the County's jails to express themselves and to associate with others through the mail.

a. First, San Mateo County does not allow incarcerated people to access mail except through tablets or kiosks. The County does not print copies of scanned mail for incarcerated people, and it does not provide printers to allow incarcerated people to print their mail directly.

b. Second, the County does not provide those incarcerated with adequate time to read and respond to scanned mail. Tablets can be accessed only during limited recreational time, sometimes for no more than thirty minutes per day, and those incarcerated must also use this limited time for showering, exercising, making phone calls, and other activities. There are typically only ten tablets and four kiosks in a recreational area, although the space may be used by over 50 people at once. Because tablets are also used for other activities, including streaming videos, managing commissary balances, and doing legal research, not everyone who needs to use a tablet during recreational time can access one.

c. Third, private reading and reflection on the tablets is all but impossible. The tablets are available only in shared recreational areas, forcing everyone to read their mail in public spaces.

d. Fourth, the tablets themselves are plagued by technical problems. They frequently freeze, break, or lose their charge.

e. Fifth, the tablets have small screens, making it difficult to read scanned mail. At seven inches across, the screens are only slightly larger than a standard smartphone, and the tablets do not allow users to enlarge or zoom in on text or images.

As a result, people incarcerated in San Mateo County experience significant difficulties in attempting to access and read their scanned mail.

40. Nor are other forms of communication a substitute for the loss of physical mail. Phone calls, for example, are more expensive than mail and are beset by technical difficulties that result in calls being dropped or that leave participants with fewer than fifteen minutes to speak. Phones are in shared spaces, often immediately adjacent to one another, leaving incarcerated people like Mr. Roberts, Mr. Greenberg, Mr. Gonzalez-Magallanes, and Mr. Prasad without a private space

to speak. Video visitation and email messaging, which can be costly, are conducted through the same tablets and kiosks provided by Smart Communications, and therefore individuals face the same difficulties using them reliably and privately. Video visitation is particularly difficult to use because calls often drop due to poor internet connectivity, and the facial-recognition feature that isolates each user's face can cause the calls to freeze or drop if either user moves their face, tilts their head at an unfamiliar angle, or even sneezes. On information and belief, the facial-recognition feature malfunctions with greater frequency for individuals of color, including Ms. Oladipo. On information and belief, all of these methods of communication are also recorded and retained for years. Finally, in-person visits are permitted at Maple Street Correctional Center only for people enrolled in jail programming; the availability of programming is limited, and many people have gaps between participating in programs. Most who qualify for in-person visits are permitted only one visit every 15 days. Maguire Correctional Facility allows more frequent visits, but at both facilities San Mateo County has significantly shortened visitation hours since 2019 and does not allow visitation from minors. These alternative channels of communication are logistically challenging, expensive, and afford minimal privacy. And of course, none resembles or replaces the intimacy and reliability that physical mail provides.

41. San Mateo County's elimination of physical mail has been devastating to the ability of those in jail and their loved ones to communicate with one another. As explained further below, all Plaintiffs have experienced the expressive harms associated with mail digitization.

**The surveillance of mail under the County's mail policy**

42. San Mateo County's mail policy subjects both senders and recipients of mail to long-term and suspicionless surveillance, including for reasons unrelated to the safety of the County's jails.

43. First, through MailGuard, San Mateo County has centralized and long-term access to an extraordinary new breadth of information about incoming mail and those who send it. Through a program provided by Smart Communications, called the SmartEcosystem Dashboard, San Mateo County officials can access digital copies of each piece of incoming non-legal mail received since MailGuard was adopted in 2021. The dashboard also provides access to information collected about

the senders of mail, including, on information and belief, information gathered through its mail tracking service. Below is a screenshot used in Smart Communications' past marketing showing the dashboard's section on the public senders of mail. On information and belief, the version of the dashboard used by San Mateo County today is similar.[2]

44. Second, San Mateo County permits law enforcement officers from across the jurisdiction—including investigators in the sheriff's office, the district attorney's office, and in other municipalities—to search this information at any time, for any reason or no reason at all. San Mateo County does not, for example, require law enforcement officers to seek any sort of internal

---

[2] Smart Communications did not redact inmate names and IDs from this screenshot, which was featured in a marketing proposal it submitted to the Virginia Department of Corrections in 2018. An unredacted copy of the proposal was disclosed and then made public in response to a Virginia Freedom of Information Act request. To preserve the privacy of the correspondents, Plaintiffs here have included the redacted version of the screenshot used in an article describing the proposal. *See* Aaron Gordon, *Prison Mail Surveillance Keeps Tabs on Those on the Outside, Too*, Vice (Mar. 24, 2021), https://www.vice.com/en/article/wx8ven/prison-mail-surveillance-company-keeps-tabs-on-those-on-the-outside-too.

approval or articulate any individualized suspicion of wrongdoing before conducting searches in the SmartEcosystem Dashboard. The County's Corrections Manual instructs corrections officers in particular to "read [correspondence] as frequently as deemed necessary to maintain security or monitor a particular problem." On information and belief, County officials have used their authority to search through the dashboard freely.

45. Third, San Mateo County's adoption of MailGuard also exposes this private information to Smart Communications, which, on information and belief, is free to use the information however it pleases. San Mateo County's contract with Smart Communications places no limit on how the company can utilize the information it gathers from physical mail or by tracking the public senders of it. For example, on information and belief, Smart Communications has previously advertised MailGuard by using screenshots of an individual's actual mail, without regard for their privacy. In 2018, Smart Communications included the following screenshot of what appears to be a private letter—without the redaction seen here—in a proposal it made to the Virginia Department of Corrections.[3]

Reference #: 77,572
From:
To:
Received: 07/17/2018
Status: Pending Review
Link to File: 9B4274A8-0338-DA64-52540C1490528D6D.pdf
Actions: Delete Postal Mail Reassign

Quarantine
This postal mail is currently pending review.

Quarantine
This postal mail is currently pending review.
APPROVE HOLD REJECT

Scanned Content
Page: 1 of 6 Automatic Zoom

Niko July 2, 2018
Okay so this is my 2nd letter to you today cause I'm actually mailing it out tomorrow!
So I wanted to tell you I miss my best friend, my swimming buddy, my everything

[3] As described in note 2, *supra*, the version provided to the Virginia Department of Corrections redacted neither the name of the sender nor of the recipient.

46. San Mateo County and Smart Communications have not provided either the senders or recipients of mail with notice describing how they now store and search mail. Many family members and senders of mail only learned about the adoption of MailGuard from their loved ones, and otherwise had no way to know that sending a letter to someone incarcerated in San Mateo County would result in extensive, long-lasting surveillance. When mail is sent directly to a San Mateo County jail, the County either forwards the mail to Smart Communications or returns the mail with instructions to send it to Florida, but does not inform the sender that doing so will subject them to long-term surveillance by law enforcement officers and a private contractor. The mailing instructions page on the County sheriff's office website instructs people to send mail to Smart Communications' Florida mailing address, but it does not provide any information about its destruction of mail and surveillance of the digital copies. A notice buried elsewhere on its website, and, on information and belief, posted in the lobbies and some common areas of the jails, describes a "new jail mail procedure" but fails to explain that the digital copies of mail are accessible to both San Mateo County and Smart Communications for at least seven years after the recipient has been released from incarceration. On information and belief, the notice provided to incarcerated recipients through Smart Communications tablets similarly omits this crucial information.

47. This unprecedented invasion of privacy in San Mateo County's jails has predictably chilled the use of mail, as similar mail digitization efforts have in other locations. For example, when Tuolumne County, California implemented MailGuard, it recorded a decrease in mail sent to people incarcerated in its jails—a fact Smart Communications used to advertise MailGuard to San Mateo County. And in response to Pennsylvania's adoption of MailGuard in 2018, multiple family members explained to reporters that they subsequently stopped or altered their use of mail to communicate with their loved ones in custody. As discussed further below, all Plaintiffs have experienced this chilling effect and reduced or stopped their use of mail to communicate in the wake of San Mateo County's adoption of MailGuard.

**The lack of penological justification for the County's mail policy**

48. San Mateo County has never adequately explained its decision to adopt this mail policy, nor is there a legitimate government interest in retaining it. In the County's initial press

release announcing the adoption of MailGuard, the County said only that it would "mak[e] some changes to the way people receive mail" to "prioritize the safety and security of those in our correctional facilities." And in response to criticism of the decision on Facebook, the sheriff's office asserted that "our changes are to help keep everyone safe since there has been some concerns regarding fentanyl exposures with the old mail system we were using." But the County has said virtually nothing else to explain the decision.

49.     San Mateo County has never publicly suggested that fentanyl was a significant problem within its facilities, that the presence of fentanyl was significantly increasing, or that any data pointed to mail as a significant source of fentanyl. Indeed, although the sheriff's office has not provided information on fentanyl-related drug incidents, an outside study of fentanyl overdoses around the United States revealed that, between 2013 and March 30, 2021, there were no publicly reported fentanyl-related overdoses in either of the County's jails.

50.     Nor is there evidence that mail is a significant source of fentanyl or other drugs in San Mateo County's jails. Court records, federal investigations, and public statements instead show that the primary channel through which drugs are introduced into jails and prisons is *staff*. For example, the executive director of the Missouri Corrections Officers Association admitted in 2022 that staff were the main source of drugs in Missouri's jails. Also in 2022, a New York City Department of Corrections investigator testified in federal court that drugs and other contraband can "usually" be traced to jail staff and officers. Finally, in a 2019 report on conditions in the Alabama prison system, the U.S. Department of Justice described interviews with multiple officials who confirmed that staff smuggling was the primary source of drugs, and it recommended screening all staff for drugs in the future. In San Mateo County itself, staff smuggling also appears to be a problem; multiple jail employees have pleaded no contest to charges that they smuggled drugs into its jails.

51.     In contrast, mail-related drug trafficking appears rare. In Florida state prisons, for example, less than 2% of the contraband items confiscated over a two-year period were traced back to mail, and only 0.35% of mail contained contraband. In Texas, the rate of mail with suspicious or

"uninspectable" substances—which would include drugs as well as stickers or fragrances—was only 0.5% in 2019.

52. There is also little evidence that mail digitization reduces the prevalence of drug use or drug overdoses in jails or prisons. Following statewide adoption of MailGuard in Pennsylvania, the drug test positivity rate actually increased. Similarly, after Missouri contracted with a different company to digitize and destroy incoming mail, the number of average overdoses in the state's jails and prisons increased from thirty-one to thirty-seven per month. And in New Mexico, after prisons banned physical mail, the drug test positivity rate nearly doubled.

53. Any claims that San Mateo County may make to justify the elimination of physical mail because of health effects on staff who handle drug-laced mail would be similarly unsupported. There is no evidence that drug-laced mail poses a serious threat to prison staff who inspect it. As the *New York Times* and others have reported, scientific literature has shown definitively that brief contact with fentanyl—even without gloves or other common protective clothing—is insufficient to cause a high, let alone an overdose. And in any event, the digitization of mail does not actually eliminate the need to handle the mail; it simply shifts the responsibility for doing so to others working at the behest of the County.

54. Nor has the County attempted to explain why other, less speech-restrictive and more privacy-protective tools that could limit drug use in its facilities are insufficient. For example, the County has previously used drug-sniffing dogs and Raman spectroscopy devices to scan mail for the presence of drugs. And there are means of limiting drug use that extend beyond mail: Examples from other correctional facilities indicate the adoption of better drug treatment programs and staff security measures can reduce drug overdoses and drug test positivity rates.

55. Rather than serve San Mateo County's penological interests, the County's mail policy harms them. Correspondence plays a crucial role in strengthening community and family connections, improving post-release outcomes, and promoting better mental health. Regular communication—including through mail—strengthens an incarcerated person's community ties, which predict better adjustment following incarceration. In the words of criminologist Joan Petersilia, "*every* known study that has been able to directly examine the relationship between a

prisoner's legitimate community ties and recidivism has found that feelings of being welcome at home and the strength of interpersonal ties outside prison help predict postprison adjustment." For instance, studies have found that more frequent family contact, including through letters, is associated with greater feelings of connectedness; stronger parent-child relationships; improved mental health for incarcerated people; reduced depression and anxiety for children of incarcerated parents; and a higher likelihood of housing stability, income self-sufficiency, and educational or vocational advancement. Recognizing the importance of this communication, both the California Department of Corrections and Rehabilitation and the federal Bureau of Prisons explicitly encourage correspondence during incarceration.

56. Physical letters are particularly important during incarceration. Studies confirm that letter-writing creates space for communication in which both senders and recipients have time for reflection. Some studies of incarcerated parents suggest that parents opt for writing letters over other forms of contact for this reason. And as discussed above, other studies have emphasized that physical objects are associated with permanence and emotional attachment. The County's mail policy deprives people of these benefits of letter-writing. The limited, public access incarcerated people have to their scanned mail does not provide the contemplative space or privacy necessary to foster their relationships, and the scanned mail itself does not carry the same emotional resonance as the original physical copy. As a result, the County's policy impedes incarcerated people and nonincarcerated letter-writers from maintaining these vital ties.

***The Plaintiffs***

57. Plaintiffs in this case are people and organizations who have been injured by San Mateo County's mail policy. They have been deprived of the opportunity to communicate with their loved ones and communities through physical mail, either because they are incarcerated in one of the County's jails or because they have a relationship with someone who is. They have been deterred by the knowledge that San Mateo County and Smart Communications are collecting and storing digitized copies of their correspondence, and many Plaintiffs have responded by refusing to send mail into the County's jails or by asking their loved ones not to do so. They have struggled to maintain personal, religious, and community-based connections, because there are no other forms

of communication that substitute for physical mail. As described further below, their privacy, their relationships, and their expression have all been compromised by the County's use of MailGuard.

**A.B.O. Comix**

58. Plaintiff A.B.O. Comix is a collective of artists that works to amplify the voices of incarcerated LGBTQ people through artistic expression. It collaborates closely with incarcerated artists to promote mutual support and to keep incarcerated members connected to the outside community. It has nearly 450 incarcerated members, including at least one member incarcerated in Maple Street Correctional Center with whom A.B.O. Comix's staff has corresponded in the last year.

59. Correspondence with incarcerated people is at the core of A.B.O. Comix's mission. The collective relies on mail to communicate with incarcerated people about their artistic projects, to circulate newsletters with interactive storytelling prompts, to connect people in prisons and jails with penpals, and to send holiday cards as signs of love and support.

60. Mail digitization and destruction policies, including San Mateo County's, have undermined A.B.O. Comix's expression and association with its incarcerated members. Many of the materials the collective wishes to send to its incarcerated members simply cannot be replicated via scanned mail. For example, its quarterly newsletter includes storytelling prompts meant to help incarcerated members think creatively and grow as artists and writers. The prohibition on physical mail makes it impossible for newsletter recipients to fill out or annotate these prompts directly, and because San Mateo County allows only limited access to tablets, creating art using the storytelling prompts is impractical for people in the County's jails. Many of the collective's nonincarcerated members also create intricate, hand-crafted messages and hand-drawn pictures for their incarcerated penpals, and they do not believe that scanned copies can ever substitute for these messages. The destruction of their original letters is demoralizing for A.B.O Comix's staff and nonincarcerated members.

61. Mail digitization and destruction policies, including San Mateo County's, have also deterred members of the collective from expressing themselves as openly. A.B.O. Comix's staff and nonincarcerated members now hesitate to write as freely, especially about political or LGBTQ

issues. While A.B.O. Comix is a collective aimed at supporting incarcerated members of the LGBTQ community, not all of its members may identify as queer within jailhouse walls. Knowing their letters will be read in public spaces and retained for years by jail officials and private companies, nonincarcerated members now write less freely about LGBTQ issues out of fear for retaliation against incarcerated penpals.

**Kenneth Roberts**

62. Plaintiff Kenneth Roberts has been incarcerated at Maple Street Correctional Center since September 2021. Mr. Roberts is one of 24 people currently enrolled in the CHOICES Program, an application-only substance use intervention program that has a waiting list of approximately 200 people. Mr. Roberts is also a devoted father and the son of loving parents. He spends a significant amount of his time counseling and supporting others incarcerated in the jail, and has even become a de facto barber for some of the men incarcerated with him.

63. Although Mr. Roberts feels compelled to use MailGuard to keep in touch with his family, the invasiveness of the County's mail policy has inhibited his expression and association with others. He is acutely aware that his mail can be read at any time, for any purpose, over many years by San Mateo County or by Smart Communications. He also knows that other people in his pod can see his mail when he views it on a tablet in the recreational room. He receives far less mail now than he did during previous periods of incarceration at facilities that did not rely on MailGuard, in part because his family members want to avoid the long-term retention of their intimate communications.

64. San Mateo County's prohibition on physical mail substantially restricts Mr. Roberts's ability to communicate. In his view, scanning mail destroys its sentiment. He is especially distressed that he can no longer hold the drawings his four-year-old daughter still occasionally creates for him, that he cannot trace her designs and feel the texture of her colored pencil on the paper, and that her original artwork is being destroyed by Smart Communications. Equally upset by the destruction of her artwork, Mr. Roberts's daughter's mother has stopped encouraging her to make and send him picutres. Mr. Roberts also finds it difficult to read and respond thoughtfully to

scanned letters, because of his limited access to tablets and his inability to underline and revisit portions of letters he wants to respond to.

65. Mr. Roberts would also like to use mail to further his education, but the County's mail ban has prevented him from doing so. He has looked into opportunities to earn college credit and to continue working towards his certification as a substance use counselor through correspondence courses, but he has concluded that it would be impossible to take advantage of these opportunities without being able to fill out physical coursework and without having sufficient tablet access to ensure that he could complete readings and take notes.

**Zachary Greenberg**

66. Plaintiff Zachary Greenberg has been incarcerated at Maple Street Correctional Center since January 2021. He was previously incarcerated at Maguire Correctional Facility from December 2020 to January 2021. Mr. Greenberg is a devoted partner to his significant other Wumi Oladipo and remains close to his parents and other family members. He also practices Judaism and has found connecting to his religion especially important to enduring the challenges and isolation of incarceration.

67. The invasiveness of MailGuard has inhibited Mr. Greenberg's expression and association with others. He initially received mail through MailGuard, but the surveillance made possible by Smart Communications led Mr. Greenberg to limit his communication by mail. Eventually, he told his family and friends not to mail him at all. He also filed formal grievances protesting the mail policy as unconstitutional and stating that he withdrew his consent to MailGuard's terms of use. However, the policy of the sheriff's office is not to accept grievances "if they are challenging the rules and policies themselves," and he has not received any acknowledgment of or response to these grievances. Mr. Greenberg also attempted to withdraw his consent on the tablets provided by Smart Communications but could not find any option to do so. Mr. Greenberg has confirmed that his express withdrawal of consent was not honored: mail sent to him by post-release programs is still being scanned and uploaded to MailGuard. Because receiving this mail is critical to preparing for probation hearings and securing reentry assistance, he feels he has no choice but to continue checking his MailGuard account.

68. San Mateo County's prohibition on physical mail substantially restricts Mr. Greenberg's ability to communicate. Before the current mail policy was enacted, he received letters from Ms. Oladipo regularly. He cherishes those letters and has saved them to re-read; he finds them especially helpful at times when he is struggling emotionally. Since April 2021, Mr. Greenberg has not been able to receive physical mail from any loved ones, and he now no longer receives even scanned mail from them. The loss of this crucial medium of communication has caused him significant distress, especially because no other form of communication available to him can provide the intimacy, privacy, and reliability of physical mail.

69. San Mateo County's mail policy also interferes with Mr. Greenberg's ability to correspond with and secure acceptance to post-release reentry programs. Many of these programs will communicate only by mail, and the correspondence is often time-sensitive. Mr. Greenberg has found it nearly impossible to correspond with reentry programs in a timely manner through MailGuard, sometimes not receiving their mail until more than a month after it was sent.

70. The elimination of physical mail has substantially burdened Mr. Greenberg's practice of his religion as well. Mr. Greenberg would like to correspond with a rabbi because he has been told that no rabbis are available for in-person religious meetings at the jail. Mr. Greenberg considered mail as an alternative way of connecting with and receiving guidance from clergy leaders of his faith, but because he objects to the scanning, surveillance, and retention of his personal religious correspondence, that option is not available to him.

**Ruben Gonzalez-Magallanes**

71. Plaintiff Ruben Gonzalez-Magallanes has been incarcerated at Maple Street Correctional Center since August 2022. He has been a devout adherent of Maliki Sunni Islam for eight years.

72. Although Mr. Gonzalez-Magallanes felt compelled to consent to MailGuard's terms of use so that he could receive his mail, the invasiveness of MailGuard has inhibited his expression and association with others. Though he was previously incarcerated in a facility that photocopied physical mail, he has never before had his mail subjected to long-term retention and surveillance.

Knowing that letters addressed to him are accessible to both the County and a private company, he now communicates much less frequently with his mother and his imam.

73. The County's prohibition on physical mail substantially restricts Mr. Gonzalez-Magallanes's ability to communicate. He especially cherished the ability to smell the scent of his mother's perfume on the physical letters she used to send him. He does not believe scanned mail is a substitute for the original letters and cards he once received.

74. The County's mail policy has also substantially burdened Mr. Gonzalez-Magallanes's religious practice. He once relied on written materials, like letters or pamphlets, to study the teachings of Islam and maintain his religious practice. During prior periods of incarceration, he could meet with imams in person and attend group worship. Because these options are not available in San Mateo County, physical texts and teachings are even more central to his ability to practice Islam. He also relied on written materials to share his beliefs with other people in Maple Street Correctional Center. His faith teaches that he may not withhold knowledge from those who seek to learn, but that it is a sin to misconstrue the teachings of Islam. He believes that putting his imam's teachings into his own words would violate this precept. The County's ban on physical mail has meant that Mr. Gonzalez-Magallanes can no longer fulfill his mandate to study and share knowledge of Islam.

**Domingo Aguilar**

75. Plaintiff Domingo Aguilar is in civil detention at Maguire Correctional Facility, where he has been since approximately June 2022. Before that, he was incarcerated at Maple Street Correctional Center from August 2019 to June 2022. Mr. Aguilar is a loving son whose elderly mother lives in Arizona near the U.S.-Mexico border.

76. The invasiveness of MailGuard has inhibited Mr. Aguilar's expression and association with others. As soon as San Mateo County adopted the mail policy, he became concerned about his privacy and the privacy of his loved ones. He refused to consent to receive mail through MailGuard and immediately advised his family to stop sending him mail.

77. The loss of physical mail has affected Mr. Aguilar deeply. Prior to the new policy, he relied on mail to stay in touch with his mother, who is elderly and lives far from San Mateo. He

still keeps several pieces of mail he received before the adoption of MailGuard, including a letter from his father and birthday cards, and re-reads them again and again, often doing so at night to comfort himself and reduce stress. The loss of physical mail deprives Mr. Aguilar of this singular comfort, and he is especially distraught that his mother cannot mail him physical photos of his granddaughter, who was born in June 2022. Mr. Aguilar does not believe that other methods of communication can ever substitute for the connection and expression he achieved through physical correspondence.

**Kevin Prasad**

78. Plaintiff Kevin Prasad has been incarcerated at Maple Street Correctional Center since April 2018. Mr. Prasad spends his time practicing the Hindu religion; connecting with his mother, sister, father, and uncle; and helping other incarcerated individuals advocate for themselves and conduct legal research.

79. The invasiveness of MailGuard has inhibited Mr. Prasad's expression and association with others. Knowing that he must now access mail in public spaces and that mail will be subject to long-term surveillance by San Mateo County and Smart Communications, he has instructed his family members to stop sending him mail. He has received only two pieces of mail through MailGuard. Those items were already available in Mr. Prasad's MailGuard account when he first signed on and accepted its terms of use—indicating that the mail had been scanned and uploaded before Smart Communications had his consent to do so. Mr. Prasad subsequently wrote to Smart Communications and stated that he withdrew his consent to the MailGuard terms of use, but he did not receive a response.

80. Mr. Prasad believes that San Mateo County's prohibition on physical mail substantially restricts his ability to communicate. He misses receiving multiple letters per month from his family members. He views physical mail as uniquely expressive and deeply values the physical letters he has from before the mail ban. He is especially disturbed that, under the policy, he is no longer able to touch the letters his family members touched and smell the familiar scents that lingered on mail sent by his mother and uncle. The loss of mail is particularly challenging because he lacks meaningful alternatives; for example, his older relatives struggle with video

visitation, and his parents live over two hours away from the jail, making in-person visitation difficult.

81. The mail policy has also substantially burdened Mr. Prasad's religious practice. Mr. Prasad comes from a religious family that practices a form of Hinduism unique to his ancestral home in Fiji. Mr. Prasad relies on written prayers, religious texts, and images of deities to practice his religion. In accordance with his religious practices, he uses religious imagery to focus his attention during meditation and prayer. Since the County banned physical mail, however, he cannot receive these materials from his family members through the mail. Mr. Prasad's belongings, including religious materials he received before the adoption of MailGuard, were lost while he was temporarily hospitalized in November 2022, depriving him of those materials. Mr. Prasad tried requesting images of Hindu deities from the Service League of San Mateo County, a non-profit agency that provides services for those incarcerated in the County's jails, but Service League is not permitted to provide printed materials that include images. These materials are central to his religious practice, and the loss of mail as a reliable source of religious instruction has hampered Mr. Prasad's ability to worship in the tradition in which he was raised.

**Malti Prasad**

82. Plaintiff Malti Prasad is the mother of Kevin Prasad. She works full-time at the California Department of Motor Vehicles. She is also a religious woman, who regularly prays and celebrates Hindu holidays.

83. The invasiveness of MailGuard has inhibited Ms. Prasad's expression and association with others. Prior to the adoption of MailGuard, Ms. Prasad's letters to her son were reviewed briefly by corrections officers when they arrived at the jail, but the surveillance enabled by MailGuard involves long-term storage of her letters. Ms. Prasad's letters to her son were often quite personal, and she feels that allowing her mail to be scanned and stored by Smart Communications and San Mateo County would be akin to allowing someone to make a copy of and read her diary. Despite the personal cost, she decided to stop communicating with her son by mail.

84. Exchanging letters with her son was a vital form of communication for Ms. Prasad, which she has now lost. She commonly sent him written prayers, discussed her thoughts and

feelings, and used the letters to teach him her native language, Fiji Hindi. These letters helped her to maintain a deep expressive and emotional connection with her son. The inability to send her son letters has deeply distressed Ms. Prasad. Although Ms. Prasad drives four hours every Sunday to see her son, sometimes only through a video monitor, and occasionally speaks to him by phone, these methods of communication are no substitute for the ease and intimacy of correspondence. The County's mail policy has substantially damaged her ability to express herself and to connect with her son.

**Wumi Oladipo**

85. Plaintiff Wumi Oladipo, who resides in Alameda County, is the significant other of Zachary Greenberg. Ms. Oladipo works as a clinical researcher at a biotechnology company and is studying to go to medical school.

86. The invasiveness of MailGuard has inhibited Ms. Oladipo's expression and association with others. She initially continued to send mail to Mr. Greenberg after the County implemented MailGuard, but she was unaware of the mail policy until Mr. Greenberg called her because he was upset about its adoption. Ms. Oladipo became uncomfortable using MailGuard because of concerns about the County's surveillance of her letters and photographs, as well as the lack of clear limits on their use and storage by Smart Communications. In February 2022, she made the difficult decision to stop sending physical mail to Mr. Greenberg altogether.

87. The inability to send Mr. Greenberg physical letters has profoundly affected Ms. Oladipo's expression and communication. Letters were integral to Ms. Oladipo's ability to sustain a romantic relationship with Mr. Greenberg when he became incarcerated. Both keep a collection of the physical correspondence that they sent to each other. Before the mail ban, they played games like crosswords and tic tac toe via mail, and Ms. Oladipo sometimes sprayed her perfume on or kissed the letters she sent to Mr. Greenberg. Now that Ms. Oladipo cannot rely on mail for these purposes, she has found it much more challenging to support and meaningfully communicate with Mr. Greenberg. As a dark-skinned Black woman, Ms. Oladipo has particular difficulty with Smart Communications' video visitation software. The software's facial recognition technology often does not recognize Ms. Oladipo's face, which makes it frustrating—and often impossible—to

conduct video calls. And although she and Mr. Greenberg speak on the phone, these brief conversations are more logistical in nature and do not create the same feeling of intimacy that their letters once did. Without mail, Ms. Oladipo struggles to maintain her connection to Mr. Greenberg.

## CAUSES OF ACTION

### COUNT ONE

***First Amendment to the U.S. Constitution (42 U.S.C. § 1983)***

***On behalf of all Plaintiffs against all Defendants***

88. Defendants' mail policy—which includes opening, examining, destroying, and digitizing physical mail and retaining mail and sender information for subsequent investigative use—violates the First Amendment because it eliminates an entire medium of communication, because it chills the expressive and associational activity of Plaintiffs and others, because it is not rationally related to any legitimate penological goals, and because it leaves no adequate alternatives to communication via physical mail.

89. In carrying out this policy, Defendants act under color of state law to operate a program that violates the First Amendment.

### COUNT TWO

***Article 1, Section 2 of the California Constitution***

***On behalf of all Plaintiffs against all Defendants***

90. For the same reasons, Defendants' mail policy violates Article I, Section 2 of the California Constitution.

### COUNT THREE

***Fourth Amendment to the U.S. Constitution (42 U.S.C. § 1983)***

***On behalf of all Plaintiffs against all Defendants***

91. Defendants' mail policy violates the Fourth Amendment because it constitutes an unreasonable search and seizure of correspondence and other information in which Plaintiffs and others maintain a reasonable expectation of privacy and a possessory interest, and because the policy is not rationally related to any legitimate penological goal.

92. In carrying out this policy, Defendants act under color of state law to operate a program that violates the Fourth Amendment.

**COUNT FOUR**

***Article I, Section 13 of the California Constitution***

***On behalf of all Plaintiffs against all Defendants***

93. For the same reasons, Defendants' mail policy violates Article I, Section 13 of the California Constitution.

**COUNT FIVE**

***Religious Land Use and Institutionalized Persons Act (42 U.S.C. § 2000cc et seq.)***

***On behalf of Plaintiffs Zachary Greenberg, Ruben Gonzalez-Magallanes, and Kevin Prasad against all Defendants***

94. Defendants' mail policy, as applied to Plaintiffs Zachary Greenberg, Ruben Gonzalez-Magallanes, and Kevin Prasad, violates the Religious Land Use and Institutionalized Persons Act ("RLUIPA") because it imposes a substantial burden on their ability to access, study, and share religious texts and because it is not the least restrictive means of achieving any compelling government interest.

95. RLUIPA applies to Defendants' conduct because Defendants receive federal funding to operate the San Mateo County Sheriff's Office, which includes its corrections division. Additionally, Defendants' policy affects interstate commerce because it affects the mail.

**REQUEST FOR RELIEF**

Plaintiffs respectfully request that this Court:

A. Declare that Defendants' mail policy—which includes opening, examining, destroying, and digitizing physical mail and retaining mail and sender information for subsequent investigative use—violates the First and Fourth Amendments to the U.S. Constitution.

B. Declare that Defendants' mail policy violates Article I, Section 2 and Article I, Section 13 of the California Constitution.

C. Declare that as applied to Plaintiffs Zachary Greenberg, Ruben Gonzalez-

Magallanes, and Kevin Prasad, Defendants' mail policy violates the Religious Land Use and Institutionalized Persons Act.

D. Enjoin Defendants and their agents from digitizing and subsequently destroying incoming physical mail.

E. Enjoin Defendants and their agents from denying incarcerated people access to physical copies of their mail.

F. Enjoin Defendants and their agents from retaining digital copies of incoming physical mail without reasonable suspicion of wrongdoing.

G. Order Defendants to provide to those incarcerated in San Mateo County's jails a physical copy of all mail addressed to them that was digitized through MailGuard, and to subsequently expunge all copies of such mail collected through MailGuard.

H. Enjoin Defendants from continuing to read, search, or otherwise use the scanned mail and other information collected through MailGuard.

I. Award Plaintiffs reasonable costs and attorneys' fees incurred in this action.

J. Grant such other and further relief as the Court may deem just and proper.

Dated: March 9, 2023

Respectfully Submitted,

STEPHANIE KRENT (*Pro Hac Vice* motion forthcoming)
ALEX ABDO (*Pro Hac Vice* motion forthcoming)
KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY
475 Riverside Drive, Suite 302
New York, NY 10115
Tel.: (646) 745-8500
Fax: (646) 661-3361
Email: stephanie.krent@knightcolumbia.org
alex.abdo@knightcolumbia.org

CARA GAGLIANO (SBN 308639)
AARON MACKEY (SBN 286647)
MUKUND RATHI (SBN 330622)
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Tel.: (415) 436-9333
Fax: (415) 436-9993
Email: cara@eff.org
amackey@eff.org
mukund@eff.org

MARIA DEL PILAR GONZALEZ MORALES (SBN 308550)

EMILY OLIVENCIA-AUDET (SBN 342116)
SHUBHRA SHIVPURI (SBN 295543)
SOCIAL JUSTICE LEGAL FOUNDATION
523 West 6th Street, Suite 450
Los Angeles, CA 90014
Tel.: (213) 973-4063
Fax: (213) 973-4063
Email: pgonzalez@socialjusticelaw.org
eolivencia@socialjusticelaw.org
sshivpuri@socialjusticelaw.org

*Attorneys for Plaintiffs*



**SUPERIOR COURT OF SAN MATEO COUNTY**
Civil Division
400 County Center, 1st Floor, Room A Redwood City, CA 94063
(650) 261-5100
www.sanmateocourt.org

FOR COURT USE ONLY

**FILED**
SAN MATEO COUNTY
3/9/2023
**Clerk of the Superior Court**
/s/ Jennifer Torres
DEPUTY CLERK

PETITIONER/PLAINTIFF: **A.B.O. COMIX; KENNETH ROBERTS; ZACHARY GREENBERG; RUBEN GONZALEZ-MAGALLANES; DOMINGO AGUILAR; KEVIN PRASAD; MALTI PRASAD; WUMI OLADIPO**

RESPONDENT/DEFENDANT: **COUNTY OF SAN MATEO; CHRISTINA CORPUS**

**NOTICE OF ASSIGNMENT FOR ALL PURPOSES (CIVIL) AND NOTICE OF CASE MANAGEMENT CONFERENCE**

CASE NUMBER: **23-CIV-01075**

By order of the Presiding Judge pursuant to San Mateo County Superior Court Local Rule 3.200(a) the above entitled matter is assigned for all purposes to: **Judge V. Raymond Swope** in **Department 23.**

**An Initial Case Management Conference is set before the Civil Commissioner (and not with the assigned Judge), as follows:**
**DATE: 7/13/2023**
**TIME: 9:00 AM**
**LOCATION: 800 North Humboldt Street, San Mateo, CA 94401**

REMOTE APPEARANCES ARE STRONGLY ENCOURAGED. Please visit our website for information on remote appearances and use the "Civil Commissioner" Credentials:
https://www.sanmateocourt.org/general_info/remote_appearance.php

ASSIGNED DEPARTMENT INFORMATION

To schedule a Law and Motion Hearing, please see Local Rule 3.402, or visit the assigned Judicial Officer's webpage at: www.sanmateocourt.org/civiljudges.

Contact information for your assigned department is as follows:

| Judicial Officer | Department Phone | Department E-mail |
|---|---|---|
| V. Raymond Swope | 650-261-5123 | Dept23@sanmateocourt.org |

CASE MANAGEMENT CONFERENCE INFORMATION

You are hereby given notice of your Initial Case Management Conference. The date, time and department are noted above.

1. In accordance with applicable California Rules of the Court and Local Rules, you are hereby ordered to:
   a) Serve all named defendants and file proofs of service on those defendants with the court within 60-days of filing the complaint (CRC 3.110(b); Local Rule 3.804).
   b) Serve a copy of this Notice, blank form of the Case Management Statement and ADR Information Package on all named parties in this action (Local Rule 3.804(a)). Documents are available online under the CIVIL CMC Packet section at: http://sanmateocourt.org/court_divisions/civil/
   c) File and serve a completed Case Management Statement at least 15 days before the Case Management

Conference (CRC 3.725; Local Rule 3.805(c)). Failure to do so may result in monetary sanctions or the continuance of the CMC.

d) Meet and confer, in person or by telephone, to consider each of the issues identified in CRC 3.724 no later than 30 days before the date set for the Case Management Conference (Local Rule 3.805(b)).

2. Parties may proceed to an Appropriate Dispute Resolution process ("ADR") by filing a *Stipulation and Order to ADR* (Local Form ADR-CV-1). File and serve the completed *Stipulation and Order to* ADR form at least 12 days prior to the Case Management Conference (Local Rule 3.805(f)). You may find this form and information regarding the Civil ADR Program online at http://sanmateocourt.org/court_divisions/adr/civil/

For additional information, you may visit the Judicial officer's webpage at: www.sanmateocourt.org/civiljudges

**CLERK'S CERTIFICATE OF SERVICE**

I hereby certify that I am the clerk of this Court, not a party to this cause; that I served a copy of this notice on the below date, ☐ by hand ☐ by electronic service to the parties or their counsel of record at the email addresses set forth below and shown by the records of this Court or ☒ by placing a copy thereof in separate sealed envelopes addressed to the address shown by the records of this Court, and by then sealing said envelopes and depositing same, with postage fully pre-paid thereon, in the United States Mail at Redwood City, California.

Date: 3/9/2023

Neal I Taniguchi, Court Executive Officer/Clerk

By: /s/ Jennifer Torres

Jennifer Torres, Deputy Clerk

Notice being served on:

CARA GAGLIANO
ELECTRONIC FRONTIER FOUNDATION
815 EDDY STREET
SAN FRANCISCO, CA 94109

MARIA DEL PILAR GONZALEZ MORALES
SOCIAL JUSTICE LEGAL FOUNDATION
523 WEST 6TH STREET, SUITE 450
LOS ANGELES, CA 90014

**APPROPRIATE DISPUTE RESOLUTION INFORMATION SHEET**

**SUPERIOR COURT OF CALIFORNIA, SAN MATEO COUNTY**

In addition to the court provided voluntary and mandatory settlement conferences, this court has established, in partnership with the community and Bar Association, the Multi-Option ADR Project. Recognizing that many civil disputes can be resolved without the time and expense of traditional civil litigation, the San Mateo County Superior Court encourages the parties in civil cases to explore and pursue the use of Appropriate Dispute Resolution

**WHAT IS APPROPRIATE DISPUTE RESOLUTION?**

Appropriate Dispute Resolution (ADR) is the general term applied to a wide variety of dispute resolution processes which are alternatives to lawsuits. Types of ADR processes include arbitration, mediation, neutral evaluation, mini-trials, settlement conferences, private judging, negotiation, and hybrids of these processes. All ADR processes offer a partial or complete alternative to traditional court litigation for resolving disputes.

**WHAT ARE THE ADVANTAGES OF USING ADR?**

ADR can have a number of advantages over traditional court litigation.

- **ADR can save time.** Even in a complex case, a dispute can be resolved through ADR in a matter of months or weeks, while a lawsuit can take years.
- **ADR can save money.** By producing earlier settlements, ADR can save parties and courts money that might otherwise be spent on litigation costs (attorney's fees and court expenses).
- **ADR provides more participation.** Parties have more opportunity with ADR to express their own interests and concerns, while litigation focuses exclusively on the parties' legal rights and responsibilities.
- **ADR provides more control and flexibility.** Parties can choose the ADR process most appropriate for their particular situation and that will best serve their particular needs.
- **ADR can reduce stress and provide greater satisfaction.** ADR encourages cooperation and communication, while discouraging the adversarial atmosphere found in litigation. Surveys of disputants who have gone through ADR have found that satisfaction with ADR is generally high, especially among those with extensive ADR experience.

**Arbitration, Mediation, and Neutral Evaluation**

Although there are many different types of ADR processes, the forms most commonly used to resolve disputes in California State courts are Arbitration, Mediation and Neutral Evaluation. The Multi-Option ADR Project a partnership of the Court, Bar and Community offers pre-screened panelists with specialized experience and training in each of these areas.

**Arbitration:** An arbitrator hears evidence presented by the parties, makes legal rulings, determines facts and makes an arbitration award. Arbitration awards may be entered as

judgments in accordance with the agreement of the parties or, where there is no agreement, in accordance with California statutes. Arbitrations can be binding or non-binding, as agreed by the parties in writing.

**Mediation:** Mediation is a voluntary, informal, confidential process in which the mediator, a neutral third party, facilitates settlement negotiations. The mediator improves communication by and among the parties, helps parties clarify facts, identify legal issues, explore options and arrive at a mutually acceptable resolution of the dispute.

**Neutral Evaluation:** Involves presentations to a neutral third party with subject matter expertise who may render an opinion about the case the strengths and weaknesses of the positions, the potential verdict regarding liability, and a possible range for damages.

**CIVIL ADR PROCEDURES FOR THE SAN MATEO COUNTY SUPERIOR COURT**

- Upon filing a Complaint, the Plaintiff will receive this **information sheet** from the Superior Court Clerk. Plaintiff is expected to include this information sheet when he or she **serves the Complaint** on the Defendant.

- All parties to the dispute may voluntarily agree to take the matter to an ADR process. A stipulation is provided here. Parties chose and contact their own ADR provider. A Panelist List is available online.

- If the parties have not agreed to use an ADR process, an initial Case Management Conference ("CMC") will be scheduled within 120 days of the filing of the Complaint. An **original and copy of the Case Management Conference Statement must be completed and provided to the court clerk no later than 15 days prior to the scheduled conference.** The San Mateo County Superior Court Case Management Judges will strongly encourage all parties and their counsel to consider and utilize ADR procedures and/or to meet with the ADR director and staff where appropriate.

- If the parties voluntarily agree to ADR, the parties will be required to sign and file a **Stipulation and Order to ADR.**

- A timely filing of a stipulation (at least 10 days prior to the CMC) will cause a notice to vacate the CMC. ADR stipulated cases (other than judicial arbitration) will be continued for further ADR/Case Management status review in 90 days. If the case is resolved through ADR, the status review date may be vacated if the court receives a dismissal or judgment. The court may upon review of case information suggest to parties an ADR referral to discuss matters related to case management, discovery and ADR.

- Any ADR Services shall be paid for by the parties pursuant to a separate ADR fee agreement. The ADR Director may screen appropriate cases for financial aid where a party is indigent.

- Local Court Rules require your cooperation in evaluating the ADR Project and will expect a brief evaluation form to be completed and submitted **within 10 days of completion of the process.**

**You can find ADR forms on the ADR webpage: www.sanmateocourt.org/adr. For more information contact the Multi-Option ADR Project at (650) 261-5075 or 261-5076.**

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.: FAX NO. *(Optional)*: | |
| E-MAIL ADDRESS *(Optional)*: | |
| ATTORNEY FOR *(Name)*: | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF** | |
| STREET ADDRESS: | |
| MAILING ADDRESS: | |
| CITY AND ZIP CODE: | |
| BRANCH NAME: | |
| PLAINTIFF/PETITIONER: | |
| DEFENDANT/RESPONDENT: | |
| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
| **(*Check one*):** ☐ **UNLIMITED CASE** (Amount demanded exceeds $25,000) ☐ **LIMITED CASE** (Amount demanded is $25,000 or less) | |

**A CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date: Time: Dept.: Div.: Room:

Address of court *(if different from the address above)*:

☐ **Notice of Intent to Appear by Telephone, by (*name*):**

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one)*:
   a. ☐ This statement is submitted by party *(name)*:
   b. ☐ This statement is submitted **jointly** by parties *(names)*:

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date)*:
   b. ☐ The cross-complaint, if any, was filed on *(date)*:

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not)*:
      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names)*:
      (3) ☐ have had a default entered against them *(specify names)*:
   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served)*:

4. **Description of case**
   a. Type of case in ☐ complaint ☐ cross-complaint *(Describe, including causes of action)*:

Page 1 of 4

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. January 1, 2009]

**CASE MANAGEMENT STATEMENT**

Cal. Rules of Court, rules 3.720–3.730
*www.courtinfo.ca.gov*

American LegalNet, Inc.
www.FormsWorkflow.com

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4. b. Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**
The party or parties request ☐ a jury trial ☐ a nonjury trial. *(If more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**
a. ☐ The trial has been set for *(date):*
b. ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a. ☐ days *(specify number):*
b. ☐ hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
a. Attorney:
b. Firm:
c. Address:
d. Telephone number:
e. Fax number:
f. E-mail address:
g. Party represented:
☐ Additional representation is described in Attachment 8.

9. **Preference**
☐ This case is entitled to preference *(specify code section):*

10. **Alternative Dispute Resolution (ADR)**
a. Counsel ☐ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
b. ☐ All parties have agreed to a form of ADR. ADR will be completed by *(date):*
c. ☐ The case has gone to an ADR process *(indicate status):*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
| --- | --- |
| DEFENDANT/RESPONDENT: | |

10. d. The party or parties are willing to participate in *(check all that apply):*
   (1) ☐ Mediation
   (2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)
   (3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)
   (4) ☐ Binding judicial arbitration
   (5) ☐ Binding private arbitration
   (6) ☐ Neutral case evaluation
   (7) ☐ Other *(specify):*

e. ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.
f. ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.
g. ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption):*

**11. Settlement conference**

☐ The party or parties are willing to participate in an early settlement conference *(specify when):*

**12. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name):*
b. Reservation of rights: ☐ Yes ☐ No
c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**13. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.
☐ Bankruptcy ☐ Other *(specify):*
Status:

**14. Related cases, consolidation, and coordination**

a. ☐ There are companion, underlying, or related cases.
   (1) Name of case:
   (2) Name of court:
   (3) Case number:
   (4) Status:
☐ Additional cases are described in Attachment 14a.
b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**15. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**16. Other motions**

☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

17. **Discovery**
   a. ☐ The party or parties have completed all discovery.
   b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

   | Party | Description | Date |
   |---|---|---|

   c. ☐ The following discovery issues are anticipated *(specify):*

18. **Economic litigation**
   a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.
   b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

19. **Other issues**
   ☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

20. **Meet and confer**
   a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

   b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

21. Total number of pages attached *(if any):* ________

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

______________________________ ▶ ______________________________
(TYPE OR PRINT NAME) (SIGNATURE OF PARTY OR ATTORNEY)

______________________________ ▶ ______________________________
(TYPE OR PRINT NAME) (SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

CERTIFIED MAIL
9414 8118 9956 2 67 7525 11
$9.190
US POSTAGE
FIRST-CLASS
FROM 10115
03/10/2023
stamps endicia
062S0012417662

Knight First Amendment Institute
475 Riverside Dr, Suite 302
New York NY 10115-0116

PS Form 3800 6/02

RECEIVED
IN THE OFFICE OF
MAR 17 2023
CLERK OF THE
BOARD OF SUPERVISORS

Clerk of the Board of Supervisors
Hall of Justice and Records
400 County Ctr
Redwood City CA 94063-1662

# EXHIBIT B

PATRICK M. RYAN (SBN 203215)
*pryan@bzbm.com*
CHAD E. DEVEAUX (SBN 215482)
*cdeveaux@bzbm.com*
CHRISTOPHER W. GRIBBLE (SBN 285337)
*cgribble@bzbm.com*
BARTKO ZANKEL BUNZEL & MILLER
A Professional Law Corporation
One Embarcadero Center, Suite 800
San Francisco, California 94111
Telephone: (415) 956-1900
Facsimile: (415) 956-1152

Attorneys for Defendants COUNTY OF SAN MATEO and CHRISTINA CORPUS

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN MATEO

A.B.O. COMIX, KENNETH ROBERTS, ZACHARY GREENBERG, RUBEN GONZALEZ-MAGALLANES, DOMINGO AGUILAR, KEVIN PRASAD, MALTI PRASAD, and WUMI OLADIPO,

Plaintiffs,

v.

COUNTY OF SAN MATEO and CHRISTINA CORPUS, in her official capacity as Sheriff of San Mateo County,

Defendants.

Case No. 23-CIV-01075

**NOTICE OF FILING OF NOTICE OF REMOVAL**

No Hearing Required

Complaint Filed: March 9, 2023

PLEASE TAKE NOTICE that on April 17, 2023, Defendants County of San Mateo ("County") and Christina Corpus, in her official capacity as Sheriff of San Mateo County ("Corpus") (collectively "Defendants"), in the above-captioned matter filed a Notice of Removal in the United States District Court for the Northern District of California, removing this action from the Superior Court of the State of California in and for the County of San Mateo, Unlimited

Division, to the United States District Court for the Northern District of California. Attached hereto as Exhibit A is a copy of Defendants' Notice of Removal.

DATED: April 17, 2023

Respectfully submitted,

BARTKO ZANKEL BUNZEL & MILLER
A Professional Law Corporation

By: ______________________

Patrick M. Ryan
Attorneys for Defendants COUNTY OF SAN MATEO and CHRISTINA CORPUS