PATRICK M. RYAN (SBN 203215)
  pryan@bzbm.com
CHAD E. DEVEAUX (SBN 215482)
  cdeveaux@bzbm.com
CHRISTOPHER W. GRIBBLE (SBN 285337)
  cgribble@bzbm.com
TAYLOR YAMAHATA (SBN 347192)
  tyamahata@bzbm.com
BARTKO ZANKEL BUNZEL & MILLER
A Professional Law Corporation
One Embarcadero Center, Suite 800
San Francisco, California 94111
Telephone: (415) 956-1900
Facsimile:  (415) 956-1152

Attorneys for Defendants COUNTY OF SAN
MATEO and CHRISTINA CORPUS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| A.B.O. Comix, Kenneth Roberts, Zachary Greenberg, Ruben Gonzalez-Magallanes, Domingo Aguilar, Kevin Prasad, Malti Prasad, and Wumi Oladipo,<br><br>                Plaintiffs,<br><br>     v.<br><br>County of San Mateo and Christina Corpus, in her official capacity as Sheriff of San Mateo County,<br><br>                Defendants. | Case No. 3:23-cv-01865-JSC<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**<br><br>Date:        June 29, 2023<br>Time:       10:00 A.M.<br>Courtroom:  8<br>Judge:      Hon. Jacqueline Scott Corley<br><br>Trial Date:   TBD |

# TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION.................................................................................................1

II.     ANALYSIS .........................................................................................................5

    A.      Remand Is Improper Because Plaintiffs Did Not Dismiss Their Federal
        Claims...............................................................................................................5

    B.      Plaintiffs' Amended Complaint Continues to Plead Federal-Law Claims.................7

        1.      The Nature of the Claims for Relief Pleaded By a Complaint Is
            Determined By the Facts It Alleges Not the Labels It Employs ...................7

        2.      The Amended Complaint Still Pleads Both State and Federal Claims .........8

            a.      Both Plaintiffs' Complaints Make Identical Allegations ..................8

            b.      Federal and California Inmate Civil Rights Claims Are
                Judged By Exactly the Same Test Which Bar Plaintiffs'
                Claims Here ......................................................................................9

            c.      Because Identical Elements Govern Plaintiffs' Federal and
                State Law Claims, Their Amended Complaint Pleads Federal
                Claims..............................................................................................11

III.    CONCLUSION .................................................................................................12

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*21st Cent. Ins. Co. v. Superior Court*
  127 Cal. App. 4th 1351 (2005) ................................................................................................. 9

*Agair Inc. v. Shaeffer*
  232 Cal. App. 2d 513 (1965) ........................................................................................... 3, 7, 11

*Alvarez v. Hill*
  518 F.3d 1152 (9th Cir. 2008) .................................................................................................. 7

*Ananda Church of Self Realization v. Mass. Bay Ins. Co.*
  95 Cal. App. 4th 1273 (2002) ............................................................................................... 6, 7

*Carnegie-Mellon Univ. v. Cohill*
  484 U.S. 343 (1988) .................................................................................................................. 4

*Cnty. of Nevada v. Superior Court*
  236 Cal. App. 4th 1001 (2015) ............................................................................................. 3, 9

*Crime Justice & Am. v. Honea*
  876 F.3d 966 (9th Cir. 2017) .............................................................................................. 9, 10

*U.S. ex rel. Darian v. Accent Builders, Inc.*
  No. CV 00-10255 FMC (JWJx), 2005 WL 8161675 (C.D. Cal. Jan. 13, 2005) .................. 5, 6

*Evans v. Skolnik*
  997 F.3d 1060 (9th Cir. 2021) ................................................................................................ 10

*Gray v. H.K. Porter Co., Inc.*
  No. C-93-3645-VRW, 1994 WL 443693 (N.D. Cal. Aug. 8, 1994) ............................... *passim*

*Heder v. City of Los Angeles*
  No. LA CV14-08215 JAK (JPRx), 2019 WL 13031499 (C.D. Cal. Sept. 27,
  2019) ....................................................................................................................................... 11

*Hill v. Rolleri*
  615 F.2d 886 (9th Cir. 1980) .................................................................................................... 1

*Hodges v. In Shape Health Clubs, LLC*
  No. 2:17-cv-01274-JAM-DB, 2017 WL 4386052 (E.D. Cal. Oct. 2, 2017) ................... *passim*

*Madrigal v. Vons Safeway Co.*
  No. CV 15-7337 DSF (FFMx), 2015 WL 13134576 (C.D. Cal. Nov. 24, 2015) ........... *passim*

*Mid-Century Ins. Co. v. Superior Court*
    138 Cal. App. 4th 769 (2006).................................................................................. 2, 5, 6

*Millar v. BART Dist.*
    236 F. Supp. 2d 1110 (N.D. Cal. 2002) .......................................................... 1, 4, 5, 6

*Offerpad Inc. v. Saenz*
    No. CV-20-00668-PHX-DWL, 2021 WL 5634870 (D. Ariz. Dec. 1, 2021)......................... 1

*People v. Abbot*
    162 Cal. App. 3d 635 (1984).................................................................................... 10

*People v. Loyd*
    27 Cal. 4th 997 (2002)............................................................................................ 10

*Pipitone v. Williams*
    244 Cal. App. 4th 1437 (2016).......................................................................... 3, 4, 8

*Pub. Sch. Teachers' Pension & Ret. Fund v. Guthart*
    No. 5:14-cv-01384 EJD, 2014 WL 2891563 (N.D. Cal. June 25, 2014) ...................... 4, 11

*In re Qawi*
    32 Cal. 4th 1 (2004)................................................................................................ 9

*Raven v. Deukmejian*
    52 Cal. 3d 336 (1990)............................................................................................ 10

*Renewable Creative v. Lake Las Vegas Destination Mktg. Council*
    No. 2:11-CV-01974-KJD-CWH, 2012 WL 1432414 (D. Nev. April 25, 2012) ............*passim*

*Reynolds v. Rios*
    No. 1:10-cv-00051-OWW-GBC PC, 2011 WL 617424 (E.D. Cal. Feb. 10,
    2011).................................................................................................................. 3, 9

*Ricks v. Voong*
    No. 18-cv-01069-JD, 2018 WL 3068305 (N.D. Cal. June 21, 2018) .......................... 1, 5

*Sacramento Cnty. Deputy Sheriffs' Ass'n v. Cnty. of Sacramento*
    51 Cal. App. 4th 1468 (1996).................................................................................. 10

*Singh v. Southland Stone, U.S.A., Inc.*
    186 Cal. App. 4th 338 (2010).............................................................................. 3, 6

*Snow v. Woodford*
    128 Cal. App. 4th 383 (2005)............................................................................ 10, 11

*Thompson v. Dep't of Corr.*
    25 Cal. 4th 117 (2001)............................................................................................ 10

*Thornburgh v. Abbott*
     490 U.S. 401 (1989) ........................................................................................................ 3, 9

*Turner v. Safley*
     482 U.S. 78 (1987) ................................................................................................ 3, 9, 10, 11

**Statutes**

California Code of Civil Procedure
     § 581(c) ............................................................................................................................ 2, 5

California Penal Code
     § 2600 ................................................................................................................................. 3, 9

**Other Authorities**

Hon. Karen L. Stevenson & James E. Fitzgerald, Rutter Group Prac. Guide: Federal
     Civ. Pro. Before Trial (The Rutter Group 2023) ................................................................ 7

Richard H. Fallon, *Foreword: Implementing the Constitution*, 111 Harv. L. Rev. 56
     (1997) ................................................................................................................................. 10

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

## I.    INTRODUCTION

It is settled that "if a case was properly removed, a plaintiff cannot thereafter oust the federal court of jurisdiction by unilaterally changing the case so as to destroy the ground upon which removal was based." *Millar v. BART Dist.*, 236 F. Supp. 2d 1110, 1116 (N.D. Cal. 2002) (citing *Hill v. Rolleri*, 615 F.2d 886, 889 (9th Cir. 1980)). Thus, "[w]hen a plaintiff amends a complaint to eliminate the federal question upon which proper removal was based, the district court has several options." *Hodges v. In Shape Health Clubs, LLC*, 2017 WL 4386052, at *2 (E.D. Cal. Oct. 2, 2017). The Court "has discretion to retain jurisdiction to adjudicate pendent state claims." *Millar*, 236 F. Supp. 2d at 1116. It also may, as Judge Walker recognized, "condition" remand on concessions from the plaintiff. *Gray v. H.K. Porter Co., Inc.*, 1994 WL 443693, at *1 (N.D. Cal. Aug. 8, 1994). This is because, as Judge Mendez cautioned, in evaluating which path to choose, the Court should "consider whether [the plaintiffs have] engaged in manipulative tactics to secure [their] desired forum." *Hodges*, 2017 WL 4386052, at *2. Courts should follow "the adage of 'trust but verify.'" *See Offerpad Inc. v. Saenz*, 2021 WL 5634870, at *2 (D. Ariz. Dec. 1, 2021).

For this reason, "***[i]f [a] plaintiff wishes for [its] case to be remanded to state court, [the plaintiff] must inform th[e] [C]ourt that [it] disavows any and all federal claims which will be dismissed <u>with prejudice</u>*.**" *Ricks v. Voong*, 2018 WL 3068305, at *2 (N.D. Cal. June 21, 2018) (emphasis added); *accord e.g.*, *Madrigal v. Vons Safeway Co.*, 2015 WL 13134576, at *2 (C.D. Cal. Nov. 24, 2015); *Renewable Creative v. Lake Las Vegas Destination Mktg. Council*, 2012 WL 1432414, at *1 (D. Nev. April 25, 2012) ("*Renewable*"); *Gray*, 1994 WL 443693, at *1. When, as here, a plaintiff refuses to dismiss its federal claims with prejudice, creating the specter of manipulative tactics, the Court should retain pendant jurisdiction over the state-law claims to prevent gamesmanship.

Here, it is undisputed that the case was "properly removed" because "at the time of removal" Plaintiffs' expressly labeled their claims as arising under federal law. *See Millar*, 236 F. Supp. 2d at 1116; *see also* Dkt. 1, Ex. A ("OC") ¶¶ 88-92, 94-95. But only after Defendants had gone to the enormous expense of drafting a comprehensive motion to dismiss, did Plaintiffs announce that they planned to amend their complaint to delete their federal claims and seek

remand. Declaration of Chad E. DeVeaux ("CED Decl."), Ex. 1 at 2. And when asked to dismiss those federal claims, so that they could not be later revivified in state or federal court, the Plaintiffs refused for obtuse reasons. *See id.* at 1.

Specifically, after being served with Plaintiffs' Amended Complaint ("AC"), Defendants' counsel informed Plaintiffs' counsel that "[b]y the time you had reached out to us regarding plaintiffs' intent to file an amended complaint, we had exhausted considerable resources preparing a motion to dismiss the federal and the state claims." *Id.* at 2. Nonetheless, Defendants diplomatically offered "not to oppose remand if the plaintiffs voluntarily dismiss all their federal claims with prejudice." *Id.* Plaintiffs' counsel responded:

> I take Defendants' concern about dismissal to be that we might *immediately file* a new lawsuit raising our federal claims and then litigate the two suits in parallel. I can assure you that we do not intend to do so, and *we have no plans of litigating our clients' federal claims __at this point__*. We cannot, however, agree to dismiss the claims with prejudice.

*Id*. at 1 (emphasis added). Defendants' counsel responded:

> I appreciate your email. If the plaintiffs do not intend to refile the federal claims either in federal or state court, *why are they unwilling to dismiss them with prejudice?*

*Id*. Plaintiffs' counsel evasively responded:

> *We see no reason to voluntarily dismiss the federal claims with prejudice*, which, as you know, is not the typical course when the case is in such early stages and there has been no decision on the merits. *We don't think there is any benefit to doing so here*, given that we've already dropped the claims and have told you that we have no intention of refiling them.

*Id*. (emphasis added).

Plaintiffs' obtuse and evasive responses create the specter they are "engaged in manipulative tactics to secure [their] desired forum" of the sort Judge Mendez warned about. *See Hodges*, 2017 WL 4386052, at *2. If Plaintiffs truly harbored "no intention" of reviving their federal claims, they had "no reason" *not* to dismiss those claims "with prejudice," to ensure they are not later revived in state court. *See* CED Decl.," Ex. 1 at 1. Plaintiffs claim no threat of subterfuge is afoot because by amending their Complaint to remove the federal labels, "all [their]

1   federal-law claims are eliminated." Dkt 28 ("MTR") at 4:13, 7:4. This is disingenuous and wrong

2   for two independent reasons.

3       First, Plaintiffs' AC not only did not dismiss their federal claims *with prejudice*—it

4   actually did not dismiss those claims at *all*. The AC merely removed the federal labels that were

5   previously placed on Plaintiffs' claims. And even if the AC could be construed as a "dismissal" of

6   Plaintiffs' federal claims (it cannot), it would be without prejudice, because California courts

7   would readily allow the claims to be later revivified. "[P]laintiffs can voluntarily dismiss [a claim]

8   until 'actual commencement of trial,' which enables them to refile the [claim] later." *Mid-Century*

9   *Ins. Co. v. Superior Court*, 138 Cal. App. 4th 769, 776 (2006) (quoting Cal. Code Civ. Proc,

10  § 581(c)). Indeed, California courts liberally "allow the amendment of a pleading at any time up to

11  and including trial." *Singh v. Southland Stone, U.S.A., Inc.*, 186 Cal. App. 4th 338, 354 (2010).

12  Thus, even if Plaintiffs truly "have no plans of litigating [their] federal claims **at this point**" and

13  do not intend to "***immediately file***" such claims,[1] the current posture does not prevent them from

14  reviving those claims after years of litigation and great expense to Defendants in state court if they

15  have a change of heart. Under current case law, Plaintiffs could literally reassert their federal

16  claims on the eve of trial, effectively blocking Defendants' constitutional right to have their

17  federal rights adjudicated by an Article III court. Plaintiffs are clearly reserving their right to

18  revive their federal claims in the future. If this is not so, why are they unwilling to dismiss those

19  claims with prejudice?

20      Second, as a technical matter, Plaintiffs' AC actually continues to plead claims for relief

21  under federal law, leaving intact the federal-question basis for subject matter jurisdiction. "Neither

22  the caption, form, nor prayer of [a] complaint will be deemed conclusive in determining the nature

23  of the liability from which the cause of action flows." *Agair Inc. v. Shaeffer*, 232 Cal. App. 2d

24  513, 516 (1965). Consequently, a plaintiff's "failure to identify" a particular constitutional

25  provision, statute, or common law rule in its complaint does not mean that the complaint does not

26  actually plead a claim under that provision, statute, or rule. *Pipitone v. Williams*, 244 Cal. App. 4th

27  1437, 1449 (2016). Rather, the complaint states such a claim if "[t]he facts pleaded . . . were

28

---

[1] *See* CED Decl.," Ex. 1 at 1 (emphasis added).

1   sufficient to put [the defendant] on notice" of such a claim. *Id.* at 1450. Here, both Plaintiffs'

2   original and Amended Complaints claim, for example, that San Mateo County's (the "County")

3   "policy of digitizing" inmate mail and providing copies "via tablets or kiosks"—which was

4   implemented to ameliorate "concerns regarding fentanyl exposures with the old mail system"—

5   violates inmates' civil rights. AC ¶¶ 1-2, 26, 49; *accord* OC ¶¶ 2, 8, 25, 31, 48.

6           Under the federal Constitution, "[r]egulations regarding the review of [prisoner's]

7   incoming mail are evaluated under the standards set forth in *Turner v. Safley*, 482 U.S. 78

8   [(1987)]." *Reynolds v. Rios*, 2011 WL 617424, at *2 (E.D. Cal. Feb. 10, 2011); *accord*

9   *Thornburgh v. Abbott*, 490 U.S. 401, 409-10 (1989). California has codified prisoners'

10  constitutional and statutory civil rights in California Penal Code § 2600, which is "designed to

11  conform California law to the decision in *Turner.*" *Cnty. of Nevada v. Superior Court*, 236 Cal.

12  App. 4th 1001, 1009 n.2 (2015). This means the elements of Plaintiffs' claims are identical under

13  both federal and California law. Thus, "[t]he facts pleaded" in the AC are "sufficient to put [the

14  County] on notice" of both state and federal claims because both claims have the same elements.

15  *See Pipitone*, 244 Cal. App. 4th at 1449. As such, "federal question jurisdiction" exists because

16  the AC still "plead[s] a cause of action created by federal law." *Pub. Sch. Teachers' Pension &*

17  *Ret. Fund v. Guthart*, 2014 WL 2891563, at *2 (N.D. Cal. June 25, 2014). Thus, Plaintiffs'

18  purported abandonment of their federal claims did not happen. They remain hidden in plain sight.

19          In light of Plaintiffs' inexplicable refusal to dismiss their federal claims with prejudice, the

20  Court should deny Plaintiffs' motion and exercise pendant jurisdiction over the state-law claims

21  because the AC continues to plead federal claims and to ensure that Plaintiffs cannot "engage[] in

22  manipulative tactics to secure [their] desired forum." *See Hodges*, 2017 WL 4386052, at *2. But,

23  at minimum, the Court should (1) "condition" that Plaintiffs' "state claims w[ill] be remanded . . .

24  at the expense of dismissing [their] . . . federal claim[s] with prejudice" (*see Gray*, 1994 WL

25  443693, at *1); or "construe[]" Plaintiffs' remand motion "as a motion to voluntarily dismiss their

26  [federal] claim[s]" and "grant[] the motion and dismiss[] [their federal] claim[s] . . . with

27  prejudice" (*see Renewable*, 2012 WL 1432414, at *1; *accord Madrigal*, 2015 WL 13134576, at

28  *2).

## II.     ANALYSIS

### A.     Remand Is Improper Because Plaintiffs Did Not Dismiss Their Federal Claims

The chief authority cited by Plaintiffs' remand motion recognizes, "[f]or decades it has been understood that removability is analyzed on the basis of the pleadings on file *at the time of removal*." *Millar*, 236 F. Supp. 2d at 1116 (emphasis added) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988)). Thus, "*if a case was properly removed, a plaintiff cannot thereafter oust the federal court of jurisdiction by unilaterally changing the case so as to destroy the ground upon which removal was based*." *Millar*, 236 F. Supp. 2d at 1116 (emphasis added).

Nonetheless, if, at an early stage, "the Court orders [a] plaintiff's federal claims dismissed *with prejudice*" or a plaintiff voluntarily dismisses its federal claims *with prejudice*, the Court may "exercise discretion in deciding whether to remand [the] plaintiff's state claims or retain them after [the plaintiff's] federal claims are dismissed." *Id.* at 1112, 1118 (emphasis added). In making this decision, the Court should "consider whether [the plaintiffs have] engaged in manipulative tactics to secure [their] desired forum." *Hodges*, 2017 WL 4386052, at *2. For this reason, Judge Donato held, "*[i]f [a] plaintiff wishes for [its] case to be remanded to state court, [the plaintiff] must inform th[e] [C]ourt that [it] disavows any and all federal claims which will be dismissed with prejudice*." *Ricks*, 2018 WL 3068305, at *2 (emphasis added). This ensures fairness because "[u]nlike a cause of action dismissed without prejudice (which may be reasserted in a subsequently-filed amended complaint), a claim dismissed with prejudice may not be reasserted." *See U.S. ex rel. Darian v. Accent Builders, Inc.*, 2005 WL 8161675, at *1 n.2 (C.D. Cal. Jan. 13, 2005). Likewise, under California law, "plaintiffs can voluntarily dismiss [a claim] until 'actual commencement of trial,' which enables them to refile the [claim] later." *Mid-Century Ins.*, 138 Cal. App. 4th at 776 (quoting Cal. Code Civ. Proc, § 581(c)).

For this reason, Judge Walker held that when a plaintiff "move[s] to dismiss voluntarily" its federal claims and "to remand . . . pendant state claims," the Court should "*condition that [the] plaintiff's state claims w[ill] be remanded to state court at the expense of dismissing [the plaintiff's] . . . federal claim[s] <u>with prejudice</u>*." *Gray*, 1994 WL 443693, at *1 (emphasis added). Judge Fischer concurred, taking a plaintiff's offer "to voluntarily dismiss [all] the claims that

1  invoke federal jurisdiction" as an invitation to "***dismiss[] those claims with prejudice***" before

2  "remand[ing]." *Madrigal*, 2015 WL 13134576, at *2 (emphasis added). Judge Dawson also held

3  the Court may "***construe[]*** the plaintiffs' remand motion "***as a motion to voluntarily dismiss***

4  ***their claim[s] raising a federal question" and "grant[] the motion and dismiss[] the [plaintiffs']***

5  ***federal] claim[s] . . . <u>with prejudice</u>***." *Renewable*, 2012 WL 1432414, at *1 (emphasis added).

6          Here, the "case was properly removed" because "at the time of removal" Plaintiffs'

7  Complaint explicitly labeled its counts to include claims for relief arising under federal law. *See*

8  *Millar*, 236 F. Supp. 2d at 1116; *see also* OC ¶¶ 88-92, 94-95. Moreover, Plaintiffs cannot invoke

9  the AC—which pleads the same claims but now labels those claims as exclusively arising under

10  state law—to obtain a remand order. The AC did not dismiss Plaintiffs' federal claims—much less

11  with prejudice. It merely removed the federal *labels* previously placed on those claims. And

12  Plaintiffs inexplicably refused to dismiss their federal claims stating they "see no reason to

13  voluntarily dismiss the federal claims" because they "have no plans of litigating [their] federal

14  claims ***at this point***." And "[w]e don't think there is any benefit to doing so here." CED Decl.,

15  Ex. 1 at 1 (emphasis added). As explained in Part II-B-2, *infra*, Plaintiffs' removal of the federal

16  labels did not remove their federal claims from the Complaint. Whether a complaint pleads a claim

17  for relief under a particular law is not determined by the "label" applied by the plaintiff because "it

18  is the *facts* behind the label which govern the nature and character of the primary right sued upon."

19  *Ananda Church of Self Realization v. Mass. Bay Ins. Co.*, 95 Cal. App. 4th 1273, 1281 (2002)

20  (emphasis in original). And, even if Plaintiffs' amendment *could* be construed as a dismissal of

21  their federal claims (it cannot), this purported dismissal would be without prejudice. "[A] cause of

22  action dismissed without prejudice . . . may be reasserted in a subsequently-filed amended

23  complaint." *Darian*, 2005 WL 8161675, at *1 n.2; *accord Mid-Century Ins.*, 138 Cal. App. 4th at

24  776. And California courts liberally "allow the amendment of a pleading at any time up to and

25  including trial." *Singh*, 186 Cal. App. 4th at 354.

26          Here, Plaintiffs' conduct suggests a high risk of such gamesmanship. After Plaintiffs filed

27  their AC and moved to remand, Defendants—following the guidance of Judges Walker, Fischer,

28  Donato, and Dawson—offered "not to oppose remand if the plaintiffs" agreed to "voluntarily

dismiss all their federal claims with prejudice." CED Decl., Ex. 1 at 2. But Plaintiffs not only rejected Defendants' offer, they refused to explain why—if they truly do not intend to reassert "federal claims in federal or state court"—they are unwilling to formally dismiss them. *See id.* Instead, they cagily averred that they "see no reason to voluntarily dismiss the federal claims" because they "have no plans of litigating [their] federal claims ***at this point***," and that they "don't think there is any benefit" to dismissing them now. *See id.* at 1 (emphasis added). But, as the above analysis shows, there plainly is a benefit to Defendants and the Court for Plaintiffs to do so, but Plaintiffs want to retain the benefit of reviving these claims later. And their own authority shows remand is only proper when the "plaintiff's federal claims [are] dismissed ***with prejudice***." *See Millar*, 236 F. Supp. 2d at 1112, 1118 (emphasis added).

In light of Plaintiffs' inexplicable refusal to dismiss their federal claims with prejudice, the Court should not place its imprimatur on such gamesmanship and deny Plaintiffs' motion and exercise pendant jurisdiction over their state-law claims because the AC continues to plead federal claims and to ensure that Plaintiffs cannot "engage[] in manipulative tactics to secure [their] desired forum." *See Hodges*, 2017 WL 4386052, at *2. But, at minimum, the Court should (1) "condition" that Plaintiffs' "state claims w[ill] be remanded . . . at the expense of dismissing [their] . . . federal claim[s] with prejudice" (*see Gray*, 1994 WL 443693, at *1); or "construe[]" Plaintiffs' remand motion "as a motion to voluntarily dismiss their [federal] claim[s]" and "grant[] the motion and dismiss[] [their federal] claim[s] . . . with prejudice" (*see Renewable*, 2012 WL 1432414, at *1; *accord Madrigal*, 2015 WL 13134576, at *2).

**B.      Plaintiffs' Amended Complaint Continues to Plead Federal-Law Claims**

If Plaintiffs' federal claims are not dismissed with prejudice the Court should retain jurisdiction because, as explained below, the AC continues to plead claims created by federal law.

**1.      The Nature of the Claims for Relief Pleaded By a Complaint Is Determined By the Facts It Alleges Not the Labels It Employs**

Plaintiffs represent that "only state-law claims remain in this case" because by amending their Complaint to remove the federal labels from their claims "all [Plaintiffs'] federal-law claims are eliminated." MTR at 4:13, 7:4. Not so. Federal notice pleading rules only require a complaint

"to set forth *claims for relief*, not causes of action, statutes or legal theories." Hon. Karen L.

Stevenson & James E. Fitzgerald, Rutter Group Prac. Guide: Federal Civ. Pro. Before Trial § 8:96

(The Rutter Group 2023) (emphasis in original). Thus, as long as the *facts* alleged in a complaint

provide "fair notice" of the claim, a "complaint need not identify the statutory or constitutional

source of the claim." *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008). Likewise, under

California's pleading rules, "[n]either the caption, form, nor prayer of [a] complaint will be

deemed conclusive in determining the nature of the liability from which the cause of action

flows." *Agair*, 232 Cal. App. 2d at 516. Rather, "the true nature of the action will be ascertained

from the basic facts *a posteriori*." *Id.* Consequently, "whether [a] complaint" specifically labels

"[a] cause of action" as arising under a particular constitutional provision, statute, or common law

rule is irrelevant to whether it pleads a claim created by that provision, statute, or rule. *Ananda*

*Church*, 95 Cal. App. 4th at 1281. This is because "it is the *facts* behind the label which govern the

nature and character of the primary right sued upon." *Id.* (emphasis in original). Accordingly, a

plaintiff's "failure to identify" a particular constitutional provision, statute, or rule in its complaint

does not mean that the complaint does not actually plead a claim under the provision, statute, or

rule. *Pipitone*, 244 Cal. App. 4th at 1449. Rather, the complaint states such a claim if "[t]he facts

pleaded . . . were sufficient to put [the defendant] on notice" of such a claim. *Id.* at 1450. Here,

Plaintiffs' AC continues to plead federal claims regardless of the labels Plaintiff now employs.

### 2. The Amended Complaint Still Pleads Both State and Federal Claims

#### a. Both Plaintiffs' Complaints Make Identical Allegations

Plaintiffs' AC "challenges San Mateo County's policy of digitizing" inmate mail. AC ¶ 1.

Pursuant to this policy, "physical mail" sent to inmates is "open[ed], scan[ned], and upload[ed]"

into a "database accessible to corrections and law enforcement officers . . . ." *Id.* ¶ 26. Jail staff

then "review mail" and "[i]f approved, a digital copy of the mail may be assessed by its recipient,

typically via tablets or kiosks." *Id.* The County initiated the policy "to help keep everyone safe

since there has been some concerns regarding fentanyl exposures with the old mail system [the

County] w[as] using." *Id.* ¶ 49. The AC posits this policy violates inmates' civil rights by

obstructing an "expressive form of communication" and that it "serves no legitimate penological

1    purpose." *Id.* ¶ 2. Plaintiffs' original Complaint made these same claims, virtually verbatim.[2]

2              **b.**     **Federal and California Inmate Civil Rights Claims Are Judged**

3                        **By Exactly the Same Test Which Bar Plaintiffs' Claims Here**

4              Plaintiffs claim that their AC "raises novel claims under [California law] regarding the

5    constitutionality of the County's decision to [digitize] non-legal physical mail" and that these

6    claims are governed by substantively different rules than analogous claims under the federal

7    Constitution. MTR at 5:11-12. Not so.

8              Plaintiffs appear to be engaging in forum shopping in order to evade controlling Ninth

9    Circuit authority set forth in *Crime Justice & Am. v. Honea*, 876 F.3d 966, 976 (9th Cir. 2017),

10   which is binding on this Court. *Honea* upheld a Butte County policy banning the delivery of

11   certain types of inmate mail due to safety concerns. *Id.* at 969. As a substitute, the jail digitized the

12   banned mail and installed "electronic kiosks" for inmates "to access electronic versions" of it. *Id.*

13   at 971. The plaintiff argued that Butte County's policy was an unlawful "suppression of

14   expression" and served no "legitimate penological interests." *Id.* at 972-73. The Ninth Circuit

15   disagreed. Under the federal Constitution, "[r]egulations regarding the review of [prisoner's] mail

16   are evaluated under the . . . test set forth in *Turner v. Safley*." *Reynolds*, 2011 WL 617424, at *2;

17   *accord Thornburgh*, 490 U.S. at 409-10. Applying the *Turner* test, *Honea* held Butte County's

18   mail policy was "reasonably related to a legitimate penological objective" and that providing

19   "kiosks" for review of "mail to inmates" is "an adequate substitute for regular distribution of paper

20   copies." 876 F.3d at 970, 976, 978. Thus, Butte County's digitized mail policy "faithfully adhered

21   _____

22   [2] Plaintiffs' original Complaint alleged the County instituted a policy "to eliminate physical mail
     within its [jails]" and began "digitizing incoming mail." OC ¶ 31. Pursuant to this policy,
23   "physical mail" sent to inmates is "open[ed], scan[ned], and upload[ed]" into a "database
     accessible to corrections and law enforcement officers . . . ." *Id.* ¶ 25. Jail staff then "review mail"
24   and "[i]f approved, a digital copy of the mail may be assessed by its recipient, typically via tablets
     or kiosks." *Id.* In 2021, "the County's then-Sheriff, Carlos Bolanos, announced that the County's
25   mail policy [is] meant to 'prioritize … safety and security.'" *Id.* ¶ 8. Specifically, the County
     initiated the new mail policy "over concerns about 'fentanyl exposures.'" *Id.* County officials
26   explained the mail digitization program was initiated "'to help keep everyone safe since there has
     been some concerns regarding fentanyl exposures with the old mail system [the jails] were
27   using.'" *Id.* ¶ 48. Plaintiffs' original Complaint alleged that the policy violates inmates' free-
     speech rights by obstructing an "expressive form of communication" and that it "serves no
28   legitimate penological purpose." *Id.* ¶ 2.

to the *Turner* analysis." *Id.* at 972.

California has codified prisoners' constitutional and statutory civil rights in Penal Code § 2600, which provides that during "confinement" prisoners may be "deprived of [civil] rights" if such deprivation "is reasonably related to legitimate penological interests." Section 2600 is "designed to conform California law to the decision in *Turner*." *Cnty. of Nevada*, 236 Cal. App. 4th at 1009 n.2. Indeed, § 2600 codifies ***the sum total of <u>all</u>*** "***statutory as well as constitutional rights***" enjoyed by prisoners under California law. *In re Qawi*, 32 Cal. 4th 1, 21 (2004) (emphasis added). Thus, while California's lawmakers and jurists sometimes "*may* choose to depart" from U.S. Supreme Court doctrine in "interpreting" constitutional rights available under California law, they have *not* done so with regard to the specific law governing this case. *See* MTR at 6:15-16 (emphasis added). Rather, the controlling law here falls under the much more common maxim that recognizes when a California and a federal constitutional provision are substantially similar, there usually is "no basis for a broader interpretation of the California [provision]" because "California courts look to United States Supreme Court authority interpreting the [analogous] federal constitutional provision" when "[i]nterpreting the California constitutional provision." *21st Cent. Ins. Co. v. Superior Court*, 127 Cal. App. 4th 1351, 1357 n.2 (2005).

"The general policy is that 'cogent reasons must exist before a state court in construing a provision of the state Constitution will depart from the construction placed by the Supreme Court of the United States on a similar provision in the federal Constitution.'" *Sacramento Cnty. Deputy Sheriffs' Ass'n v. Cnty. of Sacramento*, 51 Cal. App. 4th 1468, 1485-86 (1996) (quoting *Raven v. Deukmejian*, 52 Cal. 3d 336, 353 (1990)). Such "cogent reasons" do not exist here because California's Supreme Court unanimously held, *all* prisoner civil rights claims under California statutory and constitutional law are "governed by the high court's test in *Turner*."[3] *Thompson v.*

---

[3] Plaintiffs' claim that the mail policy "constitutes an unreasonable search and seizure in violation of Article I, § 13 of the California Constitution likewise is governed by the same rules that would apply to a Fourth Amendment claim. *See* AC ¶¶ 48, 90. Like the Fourth Amendment, a claim under Article I, § 13 turns on whether the person invoking its protection had "a reasonable expectation of privacy." *People v. Abbot*, 162 Cal. App. 3d 635, 639 (1984). With regard to inmates, California applies a bright-line rule: "a person incarcerated in a jail or prison possesses no justifiable expectation of privacy." *People v. Loyd*, 27 Cal. 4th 997, 1001 (2002). Thus, non-attorney communications with inmates are subject to unlimited "official surveillance." *Id.* at 1002.

1   *Dep't of Corr.*, 25 Cal. 4th 117, 130 (2001).

2         Under *Turner*, "to withstand a constitutional challenge" a jail regulation "must be

3   'reasonably related to legitimate penological interests.'" *Snow v. Woodford*, 128 Cal. App. 4th

4   383, 190 (2005) (quoting *Turner*, 482 U.S. at 89). This is "a rational-basis test." *Evans v. Skolnik*,

5   997 F.3d 1060, 1071 n.8 (9th Cir. 2021). "[J]udicial scrutiny under rational basis review is

6   typically so deferential as to amount to a virtual rubber stamp." Richard H. Fallon, *Foreword:*

7   *Implementing the Constitution*, 111 Harv. L. Rev. 56, 79 (1997). And *all* prisoner civil rights

8   claims under California statutory and constitutional law are "governed by the high court's test in

9   *Turner*." *Thompson*, 25 Cal. 4th at 130. Thus, the *Turner* test governs inmate civil rights claims

10  under the "California constitution." *Snow*, 128 Cal. App. 4th at 389, 390 n.3. Plaintiffs' attempt to

11  evade this Court's jurisdiction is likely motivated by the fact that the Ninth Circuit's controlling

12  decision in *Honea* dooms *both* their state and federal claims if those claims are adjudicated here.

13              **c.    Because Identical Elements Govern Plaintiffs' Federal and State**

14                      **Law Claims, Their Amended Complaint Pleads Federal Claims**

15        As Judge Davila recognized, "federal question jurisdiction" is invoked "by plaintiffs

16  pleading a cause of action created by federal law." *Guthart*, 2014 WL 2891563, at *2. A review of

17  Plaintiffs' claims, as "ascertained from the basic facts *a posteriori*" presented in their AC, reveals

18  that they continue to plead claims created by federal law. *See Agair*, 232 Cal. App. 2d at 516. This

19  is because Plaintiffs' federal and state law claims "require[] proof of the same elements"—i.e., the

20  *Turner* test. *See Heder v. City of Los Angeles*, 2019 WL 13031499, at *8 (C.D. Cal. Sept. 27,

21  2019). As such, a complaint pleading the facts necessary to sustain a state-law claim under *Turner*

22  *a priori* pleads the identical federal-law claim because both require "the same elements" and

23  implicate the same "primary right." *See id.* Indeed, Plaintiffs' AC tacitly admits this by pleading

24  that the County's mail policy "serves no legitimate penological purpose." AC ¶ 2. Plaintiffs no

25  doubt asserted this allegation because the central element of a *Turner* claim is that a jail regulation

26  is not "reasonably related to legitimate penological interests." *Snow*, 128 Cal. App. 4th at 190.

27        This shows that Plaintiffs' "federal-law claims are [*not*] eliminated." *See* MTR at 7:4.

28  Rather, those claims remain in the case hiding in plain sight, waiting to be reasserted at any time—

1  including during trial—without the inconvenience of even further amending the Complaint.

2  **III.    CONCLUSION**

3         In light of Plaintiffs' inexplicable refusal to dismiss their federal claims with prejudice, the

4  Court should exercise pendant jurisdiction over their state law claims because the AC continues to

5  plead federal claims and to ensure that Plaintiffs cannot "engage[] in manipulative tactics to secure

6  [their] desired forum." *See Hodges*, 2017 WL 4386052, at *2. But, at a minimum, the Court

7  should (1) "condition" that Plaintiffs' "state claims w[ill] be remanded . . . at the expense of

8  dismissing [their] . . . federal claim[s] with prejudice" (*See Gray*, 1994 WL 443693, at *1); or

9  "construe[]" Plaintiffs' remand motion "as a motion to voluntarily dismiss their [federal] claim[s]"

10 and "grant[] the motion and dismiss[] [their federal] claim[s] . . . with prejudice" (*see Renewable*,

11 2012 WL 1432414, at *1; *accord Madrigal*, 2015 WL 13134576, at *2).

12  DATED: June 7, 2023                                Respectfully submitted,

13                                                     BARTKO ZANKEL BUNZEL & MILLER
                                                       A Professional Law Corporation
14

15                                                     By: _____/s/ Chad E. DeVeaux_____

16                                                           PATRICK M. RYAN
                                                           CHAD E. DEVEAUX
17                                                         CHRISTOPHER W. GRIBBLE
                                                           TAYLOR YAMAHATA
18                                                         Attorneys for Defendants
                                                       COUNTY OF SAN MATEO and
19                                                     CHRISTINA CORPUS

20

21

22

23

24

25

26

27

28